IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE TRIBUNE PUBLISHING COMPANY, LLC, | ORDER |
| Plaintiff, | AND |
| | MEMORANDUM DECISION |
| vs. | |
| | Case No. 2:03-CV-565 TC |
| MANAGEMENT PLANNING, INC.; MEDIANEWS GROUP, INC.; and KEARNS-TRIBUNE, LLC, | |
| Defendants. | |

This case arises out of a larger dispute regarding the failed sale of *The Salt Lake Tribune* newspaper.  Here, the parties focus on a third-party appraisal issued by Management Planning, Inc. ("MPI"), which valued the newspaper's assets at $331 million (MPI Appraisal or Appraisal). Plaintiff Salt Lake Tribune Publishing Company ("SLTPC") alleges that the MPI Appraisal is flawed because, among other reasons, MPI's value of the newspaper assets is inflated. Defendants Kearns-Tribune LLC and MediaNews Group, Inc. argue that the Appraisal is binding and may not be set aside absent allegations of fraud (of which there are none in SLTPC's complaint).  MPI also is defending itself against claims of breach of contract and breach of fiduciary duty.

This matter comes before the court primarily on the Defendants' motions to dismiss.  As will be discussed in detail below, the court holds that the MPI Appraisal may not be set aside

based on SLTPC's allegations.  The court dismisses the remaining claims on the basis that they are either not ripe for review or are moot in light of the court's holding regarding the binding nature of the MPI Appraisal.

## I. FACTUAL BACKGROUND

This particular case is about the MPI Appraisal valuing the assets of *The Salt Lake Tribune* newspaper.  But the overall dispute is much bigger (as evidenced by two other cases currently pending in this court).[1]

SLTPC is trying to buy *The Salt Lake Tribune* from the present owners (Defendants MediaNews Group, Inc. and Kearns-Tribune LLC) (collectively, "Kearns-Tribune").  But they cannot agree on the price.  MPI, the other Defendant, is a small appraisal firm in New Jersey that got caught up in the larger dispute when it issued an appraisal report, at the request of SLTPC and Kearns-Tribune, giving an opinion on the value of *The Salt Lake Tribune* assets.

MPI and its Appraisal are currently at the center of this firestorm because SLTPC is challenging the Appraisal.  There are two aspects to the dispute currently before the court.  First, SLTPC alleges that the MPI Appraisal is flawed, and must be set aside (that is, SLTPC contends that the Appraisal may not be used to value the assets of the newspaper in its transaction with Kearns-Tribune).  Second, SLTPC alleges that MPI must be held responsible for damages caused by issuance of the allegedly flawed Appraisal.  Kearns-Tribune does not want the Appraisal vacated and says that SLTPC is bound by MPI's opinion.  MPI is defending itself against

---

[1]See Salt Lake Tribune Publishing Company, LLC v. AT&T Corporation, Case No. 2:00-CV-936 (the "AT&T case"), and MediaNews Group, Inc. v. McCarthey, Case No. 2:03-CV-176.

SLTPC's claims of breach of fiduciary duty and breach of contract.  To understand the issues

facing the court, one must understand the genesis of this dispute.[2]

**A.      The 1997 Option Agreement**

On July 31, 1997, Kearns-Tribune Corporation and SLTPC entered into an Option

Agreement, in which Kearns-Tribune agreed to grant SLTPC a five-year option to purchase all

assets associated with the operation and publication of the newspaper *The Salt Lake Tribune* (the

"Tribune Assets").  According to the Option Agreement, the exercise price for the option (the

"Exercise Price") "shall be equal to the Fair Market Value of the Tribune Assets" as further

defined in the Option Agreement.  (Option Agreement ¶ 2(a).)

The Option Agreement contains language describing the process for determining the Fair

Market Value of the Tribune Assets.  Anticipating that they might disagree on the Fair Market

Value, the parties included language that set forth the process for settling any disputes regarding

Fair Market Value.   Those paragraphs read as follows:

> Whenever any determination of the Exercise Price is required to be made
> pursuant to this Agreement, [Kearns-Tribune and SLTPC] shall endeavor in good
> faith to agree on such determination.  **If they are unable to agree** . . ., [Kearns-
> Tribune and SLTPC each] shall appoint an individual or firm who is engaged as a
> regular part of its business in valuing businesses similar in size and type to that of
> [Kearns-Tribune] . . . .  Promptly after the delivery of the reports of each
> Appraiser . . ., the various Fair Market Values of the Tribune Assets set forth in
> such reports (the "Appraised Values") shall be compared.  **If the higher of the
> two Appraised Values is not greater than 110% of the lower Appraised
> Value, then the Fair Market Value of the Tribune Assets shall be equal to the**

---

[2]For a more detailed background, see the parties' briefs and the Tenth Circuit opinion in
<u>Salt Lake Tribune Publishing Company, LLC v. Management Planning, Inc.</u>, 390 F.3d 684 (10th
Cir. 2004).

**average of the two Appraised Values; however if the higher Appraised Value is greater than 110% of the lower Appraised Value, then such two Appraisers shall jointly select a third Appraiser** . . . and **in such case the Fair Market Value of the Tribune Assets shall be equal to the average of the two closest Appraised Values reported by the three Appraisers, <u>provided, however,</u>** that if the highest and the lowest of such three Appraised Values differ from middle by an equal amount, then the Fair Market Value of the Tribune Assets shall be equal to such middle determination. . . .

   **Each determination of the Fair Market Value** of the Tribune Assets by the agreement of [Kearns-Tribune and SLTPC] or in accordance with the appraisal provisions of this paragraph 2 **shall be final, binding and conclusive**.

(Option Agreement ¶¶ 2(b), 2(d) (underline emphasis in original; bold emphasis added).)

   SLTPC exercised its option to purchase the Tribune Assets, but the parties could not agree on the Fair Market Value. Each hired an appraiser, but the two Appraised Values were too far apart, so the parties, under the Option Agreement, hired a third appraiser – Defendant Management Planning Inc. ("MPI").

**B.     The 2002 Appraisal Agreement and 2003 Appraisal Report**

   SLTPC and Kearns-Tribune together hired MPI. The agreement was memorialized in two letters (the "Appraisal Agreement"). Certain definitions and standards from the Option Agreement were incorporated into the Appraisal Agreement. Those included the definition of Fair Market Value: "the price at which a willing seller would sell, and a willing buyer (having full knowledge of the facts) would buy, the Tribune Assets in an arms' length auction transaction without time constraints and without being under any compulsion to buy or sell." (Appraisal Agreement, Nov. 27, 2002 Ltr. at 2.) The Appraisal Agreement also states that "[MPI's] analyses, opinions and conclusions will be in conformity with the Uniform Standards of

4

Professional Appraisal Practice of the Appraisal Foundation and the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers, and the terms of the Option Agreement."  (Id. at 3.)

On June 11, 2003, MPI issued its final Appraisal Report.  MPI concluded that the Fair Market Value of the Tribune Assets was $331 million.

**C.     SLTPC's Claims**

In its First Amended Complaint ("Amended Complaint"), SLTPC alleges that the Appraisal is flawed and so the parties to the Option Agreement may not rely upon it.  SLTPC seeks to have the Appraisal vacated.  SLTPC further alleges that MPI, by issuing the flawed Appraisal, has breached its fiduciary duty to SLTPC and breached the Appraisal Agreement. SLTPC does not allege fraud, corruption, or similar wrongdoing on the part of MPI.  Finally, SLTPC seeks declaratory relief against Kearns-Tribune and MediaNews Group regarding rights relating to the Option Agreement, to which MPI is not a party.

Specifically, SLTPC alleges seven claims in its Amended Complaint:

**"First Claim for Relief** Against All Defendants for a Declaratory Judgment that MPI's Final Report Cannot Be Used in Setting the Exercise Price Under the Option Agreement"

**"Second Claim for Relief** Against MPI for Breach of Contract, Including the Implied Covenant of Good Faith and Fair Dealing"

**"Third Claim for Relief** Against MPI for Breach of Fiduciary Duties"

**"Fourth Claim for Relief** Against MediaNews [and Kearns-Tribune LLC] for a Declaratory Judgment that Tribune Publishing [SLTPC] is Entitled to a Specification of the Tribune Assets as of July 31, 2002"

**"Fifth Claim for Relief** Against MediaNews [and Kearns-Tribune LLC] for a Declaratory Judgment that Tribune Publishing is Entitled to an Abatement of the Exercise Price to Compensate it for Damage to the Tribune Assets"

**"Sixth Claim for Relief** Against MediaNews [and Kearns-Tribune LLC] for a Determination of the Amount of Abatement of the Exercise Price"

**"Seventh Claim for Relief** Against MediaNews [and Kearns-Tribune LLC] for a Declaratory Judgment that Tribune Publishing has Full Rights to a Closing"

(Am. Compl. (Docket No. 105).)

# II. PROCEDURAL BACKGROUND

A.    **Earlier District Court Decision and SLTPC's Appeal to the Tenth Circuit**

In 2003, SLTPC filed a Motion to Vacate the MPI Appraisal.  The court, in its October 2, 2003 Order, denied the Motion to Vacate.  The court held that the Appraisal was an arbitration under the Federal Arbitration Act ("FAA"), gave the Appraisal the same substantial deference owed to arbitration decisions, and found that no basis existed to set aside the Appraisal.  See Oct. 2, 2003 Order Denying Pl.'s Mot. to Vacate (Docket No. 63); Sept. 18, 2003 Order (Docket No. 49) (holding that Appraisal was arbitration subject to the FAA and requiring SLTPC to file Motion to Vacate).

SLTPC appealed the court's decision to the Tenth Circuit Court of Appeals.  On November 30, 2004, the Tenth Circuit issued its decision reversing the district court's decision and remanding the case to the district court.  See Salt Lake Tribune Publ'g Co, LLC v. Management Planning, Inc., 390 F.3d 684 (10th Cir. 2004) (the "Appellate Opinion").

**B.     The Tenth Circuit's Narrow Holding and Remand to District Court**

In the Appellate Opinion, the Tenth Circuit held that neither the MPI Appraisal itself nor the three-appraiser process was an arbitration within the meaning of the Federal Arbitration Act because they did not "definitively settle the dispute between SLTPC and MediaNews."  390 F.3d at 690.  This court reads "dispute" as used by the Tenth Circuit in its Appellate Opinion to refer to the overall dispute between the parties over the option to purchase the Tribune Assets, not the discrete issue of the Option Agreement's "Exercise Price."  According to the Tenth Circuit, the MPI Appraisal was at most a "data point," id., and that under the terms of the Option Agreement, at least one scenario existed where, hypothetically, the parties would not even use the MPI Appraisal.  See id. at 690-91.  Also, the Tenth Circuit held that the parties did not intend to contractually bind themselves to arbitration.  Id. at 692.

The Tenth Circuit concluded that because the MPI Appraisal is not an arbitration, MPI's decision is not entitled to arbitral immunity.  Id.

The Tenth Circuit further stated that the district court should apply New Jersey law to SLTPC's claims relating to the Appraisal Agreement.  Id. at 695.

The Tenth Circuit decided no other issues.  Instead, the Tenth Circuit sent the case back to district court for further proceedings.  The Tenth Circuit said "we *do not* intend this decision to express any opinion as to the underlying merits of the parties' claims."  Id. at 692 (emphasis original).

7

C.    **What Motions are Now Before the Court**

After the Tenth Circuit remanded the case, the parties filed various motions.  MPI filed a

Motion to Dismiss, contending that SLTPC has not stated a claim upon which relief may be

granted (a Rule 12(b)(6) motion) and that the court does not have jurisdiction because SLTPC's

claims against MPI are not ripe for decision (a Rule 12(b)(1) motion).  Kearns-Tribune and

MediaNews Group filed a joint motion to dismiss, also contending that SLTPC has not stated a

claim upon which relief may be granted (a Rule 12(b)(6) motion).  Also before the court is

SLTPC's Motion to Lift Protective Order Granting Partial Stay of Discovery, which refers to the

court's August 18, 2003 Order (Docket No. 44).[3]

D.    **Summary of the Parties' Arguments**

1.    **Kearns-Tribune**

Kearns-Tribune contends that under New Jersey law a binding appraisal may not be set

aside absent fraud, corruption, or similar wrongdoing.  Because SLTPC has not alleged any fraud

or corruption in the Amended Complaint, Kearns-Tribune asserts that SLTPC's First Claim for

Relief must be dismissed.  Kearns-Tribune further asserts that the remaining claims against it

―――――――――――――――

[3]Kearns-Tribune and MediaNews Group filed a Renewed Motion to Dismiss the
Complaint (Docket No. 96) on March 16, 2005, which motion is technically still pending (that is,
it has not been withdrawn).  That motion, however, appears to be moot because it addressed the
allegations in SLTPC's <u>original</u> Complaint.  On April 1, 2005, SLTPC filed its First Amended
Complaint.  Following SLTPC's filing of the Amended Complaint, Kearns-Tribune and
MediaNews Group filed a Motion to Dismiss the Amended Complaint on April 14, 2005.  When
one compares the March 16, 2005 Motion to the April 14, 2005 Motion, it is clear that the April
14 Motion supercedes the March 16, 2005 Motion.  Accordingly, the March 16, 2005 Motion to
Dismiss (Docket No. 96) is moot.

(Claim Nos. 4, 5, 6, & 7) relate to potential future developments and so they are speculative,

premature and nonjusticiable .  Kearns-Tribune asks the court to stay or dismiss Claims 4, 5, 6,

and 7 because the issues they raise regard the Option Agreement and are better addressed, if at

all, in the earlier-filed AT&T case (to which SLTPC and Kearns-Tribune are parties).  (Kearns-

Tribune, LLC and MediaNews, Inc.'s Mot. Dismiss Am. Compl. at 2-3 (arguing that

"considerations of practicality and wise judicial administration" justify a stay or dismissal).)

### 2.     MPI

MPI moves to dismiss all of the claims against MPI for various reasons.  Most

importantly, MPI contends that SLTPC's claims against MPI are not ripe for decision.  It also

contends that SLTPC's damages request does not satisfy the $75,000 amount in controversy

requirement necessary to establish subject matter jurisdiction because the damages sought

(attorneys' fees and costs) are not recoverable as a matter of law.  Finally, it contends that, as a

matter of law, it does not owe a fiduciary duty to SLTPC.

### 3.     SLTPC

SLTPC argues that the Appraisal is not an arbitration under New Jersey law and that

existing New Jersey law allows courts to review and vacate appraisals for reasons other than

fraud.  SLTPC presents various reasons why the Appraisal is flawed and should be set aside,

including the reason that "MPI's final appraisal report did not comply with professional appraisal

standards, as required by the Option Agreement, and thus could not be used in calculating the

Exercise Price under the Option Agreement."  (Pl.'s Opp'n to Kearns-Tribune's Mot. Dismiss at

v.)  SLTPC also asserts that, just as the Appraisal is not protected by standards applicable to

arbitration, MPI is not immune from claims for breach of contract and breach of fiduciary duty

9

because it did not act as an arbitrator.

# III. ANALYSIS

## A.        Standard of review

In evaluating a 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true.  See Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002).  The court must also "view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed."  Id.  Because exhibits were attached to and incorporated by reference into the Amended Complaint and because the parties do not dispute the exhibits' authenticity, the court will consider those exhibits as part of the Amended Complaint's allegations.  Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1200 (10th Cir. 2003).

Under Rule 12(b)(1), essentially the same standard applies.  Because the court has not held an evidentiary hearing, the court accepts as true the Amended Complaint's uncontroverted factual allegations.  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

## B.        Under New Jersey law, how much deference, if any, should the court give to the MPI Appraisal?[4]

According to the Appellate Opinion, the court "should adjudicate SLTPC's claims under New Jersey law."  390 F.3d at 695.  SLTPC contends that the 1978 New Jersey Supreme Court

---

[4]SLTPC argues that the Tenth Circuit, in its Appellate Opinion, necessarily considered and rejected the state law argument raised by Kearns-Tribune here.  (See Pl.'s Opp'n to Kearns-Tribune Mot. Dismiss at 1.)  The court finds that the Tenth Circuit did not consider the questions currently presented in Kearns-Tribune's Motion to Dismiss and will proceed to the issues on the merits.  See Appellate Opinion, 390 F.3d at 686, 692.

decision in <u>Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.</u>, 389 A.2d 439 (N.J. 1978),

provides the rule of law for this case and so this court is legally bound to apply it.  (Pl.'s Opp'n to

Mot. Dismiss at 4 (citing Tenth Circuit decisions supporting proposition that the court is "obliged

to follow the law as articulated by the [state] [s]upreme [c]ourt") (internal citations and quotation

marks omitted).)  Kearns-Tribune contends that <u>Elberon</u> is no longer good law given the 1994

New Jersey Supreme Court decision in <u>Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.</u>,

640 A.2d 788 (N.J. 1994), and the 2000 intermediate New Jersey court decision in <u>Cap City</u>

<u>Products Co., Inc. v. Louriero</u>, 753 A.2d 1205 (N.J. Sup. Ct. App. Div. 2000).  Kearns-Tribune

asserts that <u>Tretina</u> and <u>Cap City</u> provide the rule of law the court must follow here.

As will be discussed in more detail below, the court finds that <u>Elberon</u>, <u>Tretina</u>, and <u>Cap</u>

<u>City</u> are distinguishable from the present case, and, although they are informative, they do not

resolve the issue facing the court.  Indeed, the court has determined, based on its review of New

Jersey law, that no New Jersey case states a rule that settles the precise threshold legal issue

before the court: whether a private third-party appraisal determining the value of assets but not

settling the dispute, and which the parties agreed would be "final, binding and conclusive," may

be vacated by the court only for reasons of fraud, corruption, or similar wrongdoing.

Given the lack of definitive law, the court must "predict how the state's highest court

would rule."  <u>Weiss v. United States</u>, 787 F.2d 518, 525 (10th Cir. 1986).  To do so, the court

should consider "intermediate state court decisions, policies underlying the applicable legal

principles, and the doctrinal trends indicated by these policies."  <u>Id.</u>  For example, "[b]oth the

holdings and considered dicta of the State Courts should be applied."  <u>Colorado Visionary Acad.</u>

<u>v. Medtronic, Inc.</u>, 397 F.3d 867, 871 (10th Cir. 2005).  <u>See also</u> <u>Stuart v. Colorado Interstate</u>

11

Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001) (in predicting how the state's highest court would

rule, "the federal court is 'free to consider all resources available, including decisions of [the

state's] courts, other state courts and federal courts, in addition to the general weight and trend of

authority'"); Progressive Cas. Ins. Co. v. Engemann, 268 F.3d 985, 987-88 (10th Cir. 2001)

(determining New Jersey law by following same standard articulated in Stuart).

  **1.  The Appraisal is not an "arbitration" under New Jersey law.**

  First, to clarify, the court finds that the Appraisal is not an "arbitration" under New Jersey

law and MPI is not entitled to arbitral immunity.  Many of the characteristics of an arbitration

recognized by New Jersey courts are the very characteristics that the Appellate Opinion

specifically holds do not exist in this case:

> Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute. . . . Here, MPI's appraisal would by no means definitively settle the dispute between SLTPC and MediaNews.  At most, MPI supplied a data point that the parties could use in establishing the exercise price.  Under the terms of the Option Agreement, a scenario existed where the parties would not use MPI's report at all. . . .
>
> MPI was not asked to decide between two values established by SLTPC and MediaNews, nor were they asked to assign independently a single value binding on the parties.  Indeed the parties did not even agree to average MPI's figure with one or both of their own.  The parties merely asked MPI to prepare a report evaluating the newspaper and establishing the Fair Market Value of the newspaper's assets, a value which the parties may, under certain circumstances, have used to fix the exercise price under the Option Agreement.  MPI's report would not necessarily settle a dispute between SLTPC and MediaNews.

390 F.3d at 689-91.

  In New Jersey, the courts have recognized a substantive difference between a classic

arbitration and a classic appraisal, regardless of the terminology used by the courts.  For example,

in Lakewood Twp. Mun. Util. Auth. v. South Lakewood Water Co., 324 A.2d 78 (N.J. Super. Ct.

App. Div. 1974), the court noted that the principal feature of an arbitration is that it ends the entire controversy between the parties.  324 A.2d at 83.  See also Levine v. Wiss & Co., 478 A.2d 397, 400 (N.J. 1984) ("The appraiser is expected to perform a discrete function involving only the ascertainment of particular facts.  This function, which entails neither a hearing nor the exercise of judicial discretion, is not to be confused with the duty of the arbitrator."); Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc., 389 A.2d 439, 446 (N.J. 1978) ("An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, and judgment may be entered upon the award, whereas an appraisal establishes only the amount of loss and not liability.").[5]  These cases are consistent with the general rule of law expressed by courts in other jurisdictions and in legal treatises.  See, e.g., Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n, 218 F.3d 1085, 1089-90 (9th Cir. 2000) (interpreting Oregon law, the court noted distinction between appraisal and arbitration); Rastelli Bros., Inc. v. Netherlands Ins. Co., 68 F. Supp. 2d 440 (D.N.J. 1999) (applying New Jersey law, the court noted a "great distinction between arbitration and appraisal, for while arbitration may be wide in its scope, an appraisal is limited to the narrow issue of the amount of loss"); 21 Williston on

---

[5]An intermediate New Jersey court later noted the modification of Lakewood Township, Elberon, and Levine by a subsequent New Jersey Supreme Court decision.  See Cap City Products Co., Inc. v. Louriero, 753 A.2d 1205, 1210 (N.J. Sup. Ct. App. Div. 2000) ("To the extent that statements in prior cases such as [Lakewood Township, Elberon, and Levine] suggest a different principle [regarding the scope of judicial review of an arbitration], or reach a different conclusion [that arbitrations only be set aside for reasons of fraud or similar wrongdoing] because the independent party performing the decision-making function is termed something other than an arbitrator, those cases must be deemed modified by the subsequent [New Jersey Supreme Court] holding in Tretina [Printing, Inc. v. Fitzpatrick & Assocs., Inc., 640 A.2d 788 (N.J. 1994)].").  But Lakewood Township, Elberon, and Levine do not suggest a different principle than Tretina when they define the functional differences between an arbitration and an appraisal.

Contracts § 57:8 (4th ed. 2005) (describing distinction between appraisal and arbitration);

Thomas H. Oehmke, 1 Commercial Arbitration § 1:6 (2005) ("Arbitration and appraisal are

distinct methods of dispute resolution.").

> **2.**     **The New Jersey Supreme Court would give the Appraisal the same high level of deference it gives to arbitration decisions, and so the MPI Appraisal may not be vacated absent fraud, corruption, or similar wrongdoing.**

Even given the functional distinction between appraisals and arbitrations, the court

believes that the New Jersey Supreme Court would ultimately hold that the court should treat the

Appraisal like an arbitration decision would be treated (that is, not subject to judicial review

absent allegations of fraud, corruption, or similar wrongdoing).

> **a.**     **Existing New Jersey law regarding judicial review of appraisals and arbitrations**

As noted above, the New Jersey Supreme Court has not addressed the precise issue facing

the court.  But decisions of the New Jersey Supreme Court and intermediate courts provide

valuable guidance for resolving the issue.

In the 1994 case of Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 640 A.2d 788

(N.J. 1994), the New Jersey Supreme Court definitively held that arbitration awards "may be

vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators."  640

A.2d at 793 (quoting concurring opinion in Perini Corp. v. Greate Bay Hotel & Casino, Inc., 610

A.2d 364, 399 (N.J. 1992)).  One of the court's principal reasons for the holding was that New

Jersey's policy favors finality and limited judicial involvement in arbitrations.  The Tretina court

adopted the reasoning in the Perini concurring opinion because it wanted to avoid a rule that

would deprive arbitration awards of their finality and deprive the parties of the "speed, finality

and economy that they sought from arbitration." Perini, 610 A.2d at 394 (Wilentz, C.J.,

concurring); Tretina, 640 A.2d at 792-93.  There is no question that the Tretina court was dealing

with a classic arbitration, in which the arbitrator was "appointed by the American Arbitration

Association [and] conducted twenty-two arbitration sessions over a one-year period" and which

was being evaluated under the New Jersey Arbitration Act.  640 A.2d at 790.

In 2000, the Superior Court of New Jersey, an intermediate court, applied the Tretina rule

in Cap City Prods. Co., Inc. v. Louriero, 753 A.2d 1205 (N.J. Sup. Ct. App. Div. 2000).  The

factual situation in Cap City was somewhat similar to the situation here.

In Cap City, two shareholders entered into a stock purchase agreement.  In the agreement,

they set forth a dispute resolution process to follow in the event they could not agree on the

purchase price.  If they were not able to agree on the price, they agreed to "mutually select a third

party to value the stock and to arbitrate a binding settlement."  Id. at 501.  The shareholders were

unable to agree on the purchase price, so they hired a third party, Gary Trugman, to evaluate the

stock.  One of the shareholders disagreed with Mr. Trugman's valuation and challenged it in

court.

The Cap City court held that the valuation was "an arbitration award or the product of a

settlement" and, under Tretina, could only be set aside in the event of fraud, corruption, or

similar wrongdoing on the part of Mr. Trugman.  In response to an argument that the Tretina rule

did not apply because Mr. Trugman was performing an appraisal rather than an arbitration, the

court said:

> We find the asserted distinctions unpersuasive, and we are satisfied that the
> Tretina principle applies regardless of the characterization used to describe
> Trugman's function.

15

*Tretina* does not represent a narrow holding applicable only to a specific case before the Supreme Court.  Rather, it lays out a broad, strong policy, based on the concurring opinion presented by Chief Justice Wilentz in *Perini*, which bore fruit two years later when it was adopted in *Tretina*.  The principle is set out above and its articulation can hardly be improved upon here.  To the extent that statements in prior cases such as *Elberon Bathing Co. v. Ambassador Insurance Co.*, 77 N.J. 1, 17, 389 A.2d 439 (1978)[;]  *Levine v. Wiss & Co.*, 97 N.J. 242, 248, 478 A.2d 397 (1984)[;] or *Lakewood Township Municipal Utilities Authority v. South Lakewood Water Co.*, 129 N.J. Super. 462, 471, 324 A.2d 78 (App. Div. 1974), suggest a different principle, or reach a different conclusion because the independent party performing the <u>decision-making function</u> is termed something other than an arbitrator, those cases must be deemed modified by the subsequent holding in *Tretina*.

Further, <u>the binding nature of the parties' agreement here rests also on a firmly settled, strong principle of New Jersey law apart from the *Tretina* doctrine.  Our courts have said, time and again, that settlements are favored and will be enforced whenever voluntarily agreed to by the parties</u>.

<u>Cap City</u>, 753 A.2d at 1210 (internal citations omitted) (emphasis added).  The valuation in <u>Cap City</u> was meant to settle the overall dispute between the parties, unlike the MPI Appraisal here, as noted by the Tenth Circuit in its Appellate Opinion.

Kearns-Tribune asserts that <u>Cap City</u> stands for the proposition that the same judicial review standard applied to arbitrations also applies to appraisals.  SLTPC contends that <u>Cap City</u> is an arbitration case that is inapplicable to the MPI Appraisal.  Specifically, SLTPC asserts that, despite the 1994 holding in <u>Tretina</u>, and 2000 holding in <u>Cap City</u>, the 1978 New Jersey Supreme Court decision in <u>Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.</u>, 389 A.2d 439 (N.J. 1978), is the controlling law here.  Kearns-Tribune contends that <u>Elberon</u> is no longer good law in light of <u>Tretina</u> and <u>Cap City</u>, but even if it were, its holding supports Kearns-Tribune's, not SLTPC's, position.

In <u>Elberon</u>, the New Jersey Supreme Court set aside insurance appraisals valuing property

lost in a fire.  The policy calling for the appraisals also contained the term "actual cash value," a term expressly dictated by the New Jersey Insurance Code.  Essentially, the appraisals were conducted based on statutory standards.  The <u>Elberon</u> court held that because the appraisers had committed a legal mistake by misapplying a statutory term, the court had authority to review and set aside the appraisals.  The New Jersey Supreme Court held that "an appraisal based on replacement cost without consideration of depreciation does not measure 'actual cash value' <u>under our statute</u> and is therefore improper."  <u>Elberon</u>, 389 A.2d at 443 (emphasis added); <u>see also</u> <u>id.</u> at 442 ("A standard of replacement [value] without depreciation is inconsistent with the intent and <u>the language of the statute</u>.") (emphasis added).

To the extent that <u>Elberon</u> is still good law after <u>Tretina</u> and <u>Cap City</u>, it is nevertheless distinguishable from the present situation.  As noted above, the appraisals in <u>Elberon</u> were conducted according to a specific statutory scheme.  The <u>Elberon</u> court said that the question on appeal was a "determination of the meaning of 'actual cash value,'" a statutory term in the New Jersey statute regulating the subject of fire insurance.  389 A.2d at 441.  But the parties here agreed that the MPI Appraisal would be based on "Fair Market Value" as defined in their private Option Agreement.  SLTPC's claim that MPI misapplied appraisal standards set forth by a private professional society and that MPI relied on the wrong facts to determine value is a claim of factual, not legal, mistake.  <u>See</u> <u>Elberon</u>, 389 A.2d at 446 (noting that an appraisal award "would not be set aside merely because of an erroneous conclusion of fact").  And nothing in <u>Elberon</u> suggests that the policy contained language stating that the appraisals were final, binding and conclusive.

Despite the distinguishing characteristics of the New Jersey cases cited above, one

guiding principle consistently appears in those cases.  The courts of New Jersey strongly support the public policy favoring settlement.  All of the cases note that judicial review of both appraisals and arbitrations is narrow for such public policy reasons.  See Cap City, 753 A.2d at 1210 (noting that the Tretina principle "lays out a broad, strong policy" favoring finality and that "settlements are favored and will be enforced whenever voluntarily agreed to by the parties"); Tretina, 640 A.2d at 794 ("[O]ur [Arbitration] Act suggests a . . . policy favoring finality and limited judicial involvement."); Elberon, 389 A.2d at 445-46 (stating that "[i]t is not in the public interest to encourage litigation over procedures which were designed to resolve disputes without litigation" and noting that "[t]he purposes of [appraisal and arbitration] are the same: to submit disputes to third parties and effect their speedy and efficient resolution without recourse to the courts.  To assure minimum judicial intervention, the scope of judicial review of both types of recourse is narrow.").

With that principle in mind, this court finds that if the New Jersey Supreme Court were to decide the issue presented in this case, it would apply the same narrow review standard articulated in Tretina: appraisals meant to be final and binding by the contracting parties should not be evaluated or set aside absent allegations of fraud, corruption, or similar wrongdoing.

**b.**      **The rule of law in other jurisdictions**

Such a finding is consistent with the rule of law in many other jurisdictions, whose decisions indicate a high level of judicial deference to appraisals.

> [T]he overwhelming weight of authority supports the view that decisions of an appraiser or other financial expert acting in the role of an appraiser are entitled to the same degree of finality accorded decisions of arbitrators [that is, decisions are final and conclusive absent fraud, corruption, or similar wrongdoing].  The sound principle underlying these cases is that when, as here, parties agree to have value

affixed by an appraisal, they must abide by their own agreement and are not
entitled to a new determination by the courts.

Hirt v. Hervey, 578 P.2d 624, 626-27 (Ariz. Ct. App. 1978).  See also PVI, Inc. v. Ratiopharm

GmbH, 253 F.3d 320, 325 (8th Cir. 2001) (interpreting Delaware law, court held that minority

stockholder who participated in stock appraisal process accepted appraisal as "final, binding and

conclusive," the language used in a private contract, and could not challenge appraisal in court);

FDL, Inc. v. Cincinnati Ins. Co., 135 F.3d 503, 505 (7th Cir. 1998) (interpreting Indiana law,

court held that "a party who voluntarily submits to appraisal to determine the amount due under a

fire insurance policy is bound by the appraisal award, absent . . . manifest injustice, fraud,

collusion, misfeasance or the like.");  Liberty Fabrics, Inc. v. Corporate Prop. Assoc. 5, 636

N.Y.S.2d 781, 781 (N.Y. App. Div. 1996) (holding that proper standard of judicial review of

third-party appraisal was same as arbitration: "An appraisal determination should be upheld in

the absence of fraud, bias or bad faith.");  Wojdak v. Greater Philadelphia Cablevision, Inc., 664

A.2d 587, 588 (Pa. Super. Ct. 1995) (applying Delaware law, court held that "a binding

determination by a third party appraiser selected pursuant to a private agreement is basically the

equivalent of arbitration," which "the court will vacate . . . where the award 'was procured by

corruption, fraud or other undue means.'");  Boulevard Assocs. v. Seltzer P'ship, 664 A.2d 983,

987 (Pa. Super. Ct. 1995) (holding that scope of review of appraisal conducted based on a private

agreement "is limited to fraud, misconduct, corruption or other irregularity causing an unjust

result.");  Bailey v. Timpone, 389 N.E.2d 1193, 1196 (Ill. 1979) (holding that "the salutary

purposes for permitting an informal mechanism to resolve private disputes finally and

expeditiously are served . . . by limited judicial intercession in the decision of arbitrators" and

holding that scope of judicial review of appraisal should be no broader than the scope of review of arbitration awards).

### c.   Application of the law to the MPI Appraisal

As counsel for Kearns-Tribune noted during oral argument, if the court allowed the MPI Appraisal to be challenged absent allegations of fraud or corruption, such a ruling would destroy the entire appraisal process set forth in the Option Agreement.  The first and second appraisals might be subject to challenge.  The purpose of the appraisal process was to avoid a battle of the experts by applying the various appraisal values to a mutually agreed upon formula to calculate a fair approximation of value.  The process made sense.  The parties voluntarily agreed to it and specifically stated in their agreement that each determination of the Fair Market Value would be "final, binding and conclusive."  (Option Agreement ¶ 2(d).)  The court will not intervene under the circumstances alleged by SLTPC.  Kearns-Tribune's Motion to Dismiss SLTPC's first cause of action is GRANTED.

### C.   SLTPC's second and third causes of action against MPI (breach of contract and breach of fiduciary duty) are not ripe for review.

Because the court has held that the Appraisal may not be reviewed by the court and so remains valid for purposes of the Option Agreement and the Exercise Price, the court finds that SLTPC's remaining causes of action against MPI (breach of contract and breach of fiduciary duty) are not ripe.  To satisfy the ripeness requirement, SLTPC must show that the harm asserted "has matured sufficiently to warrant judicial intervention."  Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975), quoted in Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir. 2004).

> Determining whether the issues presented by this case are ripe for review "requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Application of the fitness standard requires us to ask "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  Likewise, the hardship inquiry may be answered by asking "whether the challenged action creates a direct and immediate dilemma for the parties."

Morgan, 365 F.3d at 890-91 (internal citations omitted).  See also Levine v. Wiss & Co., 478 A.2d 397, 398 (N.J. 1984) (noting that plaintiff suffered damage after "he was forced to accept an unfavorable settlement because of the allegedly incorrect values furnished by defendants.").

In this situation, other events must occur before SLTPC can fully state a claim against MPI for damages.  Specifically, because the Appraisal continues to stand, before SLTPC can sufficiently allege that it has suffered harm, it must establish that it has another opportunity to close on the sale (that is, the issue of whether SLTPC is entitled to a second closing date after failing to close in October 2003 must be resolved in the AT&T case) and SLTPC must establish that it has the ability to purchase the Tribune Assets at what it considers to be an inflated price. SLTPC's damages claim, even assuming that SLTPC's claim for damages consisting of attorneys' fees and costs is legally valid (an issue the court does not reach), is incomplete. SLTPC has not claimed that it has suffered damages by purchasing the Tribune Assets at an inflated price.  (See Am. Compl. ¶¶ 85, 95 ("If the Court determines that MPI's Final Report must be used in determining the Exercise Price for the Tribune Assets under the Option Agreement and Tribune Publishing purchases the Tribune Assets at that inflated price, then Tribune Publishing will incur additional damages in an amount not less than the difference between the Fair Market Value of the Tribune Assets as determined by a Standards-compliant appraisal report, and the inaccurate value determined according to the MPI Final Report.")

21

(emphasis added).)  The inherent uncertainty in SLTPC's damage allegations compels the court to find that the SLTPC claims against MPI are not ripe.

As did the court in <u>Morgan</u>, this court believes that "[a]t best, further developments would undoubtedly sharpen the factual issues in this case; at worst, the failure of certain contingent events may render a decision completely advisory." <u>Morgan</u>, 365 F.3d at 891. Moreover, the record does not provide any evidence of a need for present adjudication of these issues.  The case relied upon by SLTPC to support the opposite proposition, <u>Allendale Mutual Ins. Co. v. Kaiser Engineers</u>, 804 F.2d 592 (10th Cir. 1986), is distinguishable.  In <u>Allendale</u>, the need for a present adjudication was driven by a statute of limitations concern.  804 F.2d at 592 (noting that the insurance company filed its declaratory judgment action "because it feared the four-year New Mexico statute of limitations would expire on its subrogation claim before the New Mexico Supreme Court rendered its decision on the appeal [of an award against the insurance company].") No such urgency has been established here.

Given the contingent nature of events that would give rise to a claim against MPI, the court dismisses SLTPC's second and third causes of action without prejudice.


**D.      The court dismisses SLTPC's remaining claims under the Declaratory Judgment Act.**

The remaining claims against Kearns-Tribune seek declaratory judgments (a) declaring that SLTPC has not forfeited its right to close at the current Exercise Price by failing to do so when the Tribune Assets were tendered (Seventh Claim), and (b) in anticipation of a second closing, specifying the Tribune Assets as of July 31, 2002 (Fourth Claim) and declaring SLTPC's

right to an abatement of the Exercise based on unspecified changes in those assets (Fifth and Sixth Claims).

"The Federal Declaratory Judgment Act authorizes, but does not compel, federal jurisdiction over suits seeking declaratory relief." United States v. City of Las Cruces, 289 F.3d 1170, 1181 (10th Cir. 2002) (citations and quotations omitted). The court finds that "considerations of practicality and wise judicial administration" warrant dismissal of these claims. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

The seventh claim has already been raised in the AT&T case and does not belong here, as was conceded by SLTPC. See, e.g., United States v. Zanfei, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (declaratory complaint substantially restating claims already before the court were dismissed for reasons of "practicality and of wise judicial administration"). (See also Pl.'s Opp'n to Kearns-Tribune's Mot. to Dismiss at xii ("The Seventh Claim also seeks an adjudication that [SLTPC] would still have a right to a Closing even if the MPI appraisal were not set aside; so long as this adjudication can occur in the companion case, Salt Lake Tribune Publishing Co. v. AT&T Corp. et al., No. 00-CV-936 (the "AT&T case"), it need not occur in this action.").)

The fourth, fifth and sixth claims were contingent on a ruling that the MPI Appraisal be set aside. (See id. at 8 ("[SLTPC's] Fourth, Fifth, and Sixth Claims merely seek certain relief in the event [SLTPC] is successful in its claim to set aside the MPI Appraisal.").) Given the court's decision that the Appraisal may not be set aside based on SLTPC's allegations, the court dismisses SLTPC's fourth, fifth and sixth claims as moot.

**ORDER**

For the reasons set forth above, the court ORDERS as follows:

1. Kearns-Tribune, LLC and MediaNews, Inc.'s Motion to Dismiss the Amended Complaint (Docket No. 110) is GRANTED.

2. Management Planning Inc.'s Motion to Dismiss (Docket No. 108) is GRANTED. Specifically, the court dismisses all claims against MPI because the MPI Appraisal may not be set aside under New Jersey law given the allegations in SLTPC's Amended Complaint and because the second and third claims are not ripe for adjudication.

3. Salt Lake Tribune Publishing Company's Motion to Lift Protective Order Granting Partial Stay of Discovery (Docket No. 100) is DENIED AS MOOT.

4. Kearns-Tribune, LLC and MediaNews, Inc.'s Renewed Motion to Dismiss the Complaint (Docket No. 96) is DENIED AS MOOT.

DATED this 24th day of October, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge