IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE TRIBUNE PUBLISHING COMPANY, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>MANAGEMENT PLANNING, INC.; MEDIANEWS GROUP, INC.; AND KEARNS-TRIBUNE, LLC,<br><br>    Defendants. | ORDER GRANTING MOTION TO AMEND, DENYING MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING THIRD CLAIM FOR RELIEF, GRANTING AND DENYING IN PART MOTION TO DISMISS OR STAY, AND SETTING SCHEDULE<br><br>Case No. 2:03-CV-565 PGC |

This is one of three cases involving a dispute between the Salt Lake Tribune Publishing Company, LLC (Tribune Publishing) and Kearns-Tribune, LLC and MediaNews Group, Inc. (collectively MediaNews) relating to ownership of *The Salt Lake Tribune*. In this particular case, Tribune Publishing seeks a judgment setting aside an appraisal of *The Tribune* that Tribune Publishing and Kearns-Tribune jointly commissioned from Management Planning, Inc.

Following a decision by the Tenth Circuit, Judge Tena Campbell recused from this case (she continues to handle the main litigation – notably *Salt Lake Tribune Publishing Co. v. AT&T et al.*[1] (the AT&T case). This related matter is before the undersigned judge for scheduling and on various preliminary motions. In particular, in addition to scheduling issues, pending before the court are: (1) Tribune Publishing's Renewed Motion for Leave to Amend the First Amended Complaint; (2) Management Planning's Motion for Judgment on the Pleadings Regarding Third Claim for Relief; and (3) MediaNews' Motion to Dismiss or Stay. For the reasons that follow, the court grants Tribune Publishing's motion for leave to amend the complaint, denies Management Planning's motion for judgment on the pleading on the third claim, and grants in part and denies in part MediaNews' motion to stay. The court also sets a schedule in this matter to bring the central claims to trial early next September.

## BACKGROUND

The background of this matter is more fully set forth in prior district court orders and Tenth Circuit opinions.[2] Familiarity with these orders and opinions is assumed. It is important to emphasize that this particular case focuses on the appraisal undertaken by Management Planning – not on ultimate questions of ownership of *The Salt Lake Tribune*. For purposes of the pending motion, the following information is relevant.

---

[1] No. 2:00-CV-936 TC.

[2] *See, e.g., Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.*, 454 F.3d 1128, 1132-34 & n.1 (10th Cir. 2006).

In its First Amended Complaint, plaintiff Tribune Publishing asserts seven claims. The first claim seeks a declaration that Management Planning's final appraisal report "cannot be used to calculate the Exercise Price for the Tribune Assets under the Option Agreement," and that Tribune Publishing "is entitled to a new third appraisal performed by an appraiser other than [Management Planning]."[3] The second claim seeks damages from Management Planning for alleged breach of contract.[4] The third claim seeks damages from Management Planning for alleged breach of fiduciary duty.[5] The fourth claim seeks a declaration "specifying the Tribune Assets as they existed as of July 31, 2002."[6] The fifth claim seeks a declaration that Tribune Publishing is entitled to "an abatement of the Exercise Price to compensate Tribune Publishing for any improper harm or diminution caused to the value of any of the Tribune Assets, and for any and all improper disposition of any of the Tribune Assets, during the period from August 1, 2002 to a Closing under the Option Agreement," and is entitled to "audit and assess the Tribune Assets" before closing against MediaNews.[7] The sixth claim seeks a "determination of the amount of the abatement" to which Tribune Publishing is entitled against MediaNews.[8] The seventh claim seeks a declaration that Tribune Publishing is entitled to a closing under the

---

[3] First Am. Compl. at ¶ 74.

[4] *See id.* at ¶¶ 75-84, 86.

[5] *See id.* at ¶¶ 87-96.

[6] *Id.* at ¶ 107.

[7] *Id.* at ¶ 116.

[8] *Id.* at ¶ 120.

Option Agreement.[9]  For convenience, the court will follow the parties and refer to claims one, two, and three as "the appraisal claims," to claims four, five, and six as "the asset claims," and claim seven as "the closing claim."

Tribune Publishing now moves to amend the First Amended Complaint to support its claims with allegations of evident partiality and fraud.  Management Planning and MediaNews oppose the motion.  Management Planning moves for judgment on the pleadings on the third claim in the First Amended Complaint.  Tribune Publishing opposes the motion.  MediaNews moves to dismiss or stay this matter in regard to all but claim one in the First Amended Complaint.   Management Planning agrees that the case should proceed as to the appraisal claims.  Tribune Publishing opposes the motion to dismiss or stay.  The court considers each of the motions in turn.

## DISCUSSION

### I.     Motion to Amend

Tribune Publishing has filed a motion to amend the First Amended Complaint to add various allegations bolstering its first claim, including allegations of evident partiality and fraud on the part of Management Planning.  Rule 15 of the Federal Rules of Civil Procedure specifies that "leave [to amend] shall be freely given when justice so requires."  MediaNews and Management Planning both object.  As these objections are not well-founded, the court grants the motion to amend.

---

[9]*See id.* at ¶ 126.

The Tenth Circuit has recently instructed that the "most important[] factor in deciding a motion to amend the pleadings . . . is whether the amendment would prejudice the nonmoving party."[10]  This accords with the Supreme Court's admonition that Rule 15 "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result."[11]

Management Planning and MediaNews both labor hard to discover prejudice from the proposed amendments, but their efforts are unavailing.  Management Planning essentially argues that it will suffer harm to its reputation if Tribune Publishing is allowed to allege fraud and harm to its pocketbook if it is forced to deal with an expanded complaint.  Neither of these grounds are the type of prejudice that justify denying leave to amend.  As to reputational harm, that is something that follows ordinarily from the litigation process – not something extraordinary that would justify denying leave to amend.  The Tenth Circuit has recently elaborated that "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment."[12]  As to harm from dealing with an expanded case, "[t]here is invariably some practical prejudice resulting from an amendment, but this is not the test for refusal of an amendment."[13]  This court has no doubt that, at this early stage of the

---

[10] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).

[11] *United States v. Hougham*, 364 U.S. 310, 316 (1960).

[12] *Minter*, 451 F.3d at 1208 (quotations omitted).

[13] *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971).

litigation, Management Planning will be able to effectively prepare a defense to the expanded claims without undue expense.

MediaNews' arguments are even more attenuated. It claims that an amendment is contrary to the "spirit" of the appraisal process, which was supposed to result in a prompt resolution of differences over value. This ethereal notion is not the sort of concrete prejudice required to block an amendment.

It is also worth noting that the motion to amend comes at a very early stage in litigation. While the case has been pending before this court and the Tenth Circuit for several years, the litigation is at its infancy. Initial disclosures have just been exchanged, the first substantive depositions have yet to be taken, and the court is just establishing a schedule that will bring the matter to trial next fall. Moreover, Tribune Publishing also offers a quite plausible reason for not including fraud allegations in its initial complaint – that the legal landscape is now much clearer because of the Tenth Circuit's recent decision and remand in this case. In other words, this is not a case where "the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay[] raising [an] issue until the eve of trial"[14] – any of which might serve as grounds for denying the motion to amend.

Both Management Planning and MediaNews also suggest that some of the allegations in the amended complaint are "futile" because they are not stated with particularity and do not otherwise amount to fraud. At this early juncture in the litigation, the court must accept all of the

---

[14] *Minter*, 451 F.3d at 1206 (alterations in original) (quotations and citations omitted).

allegations in the complaint as true. Viewing the amended complaint (which has been lodged with the court) in that light, the court believes that the fraud claim is alleged with particularity and that no viable facial challenges to the complaint are immediately apparent. For the benefit of the parties, the court will also note that, while the defendants would appear to be within their rights to now file a motion to dismiss targeting the newly-pleaded allegations, these issues can also be resolved at the dispositive motions stage. In light of the length of time involved in processing this case already, the court expresses its preference that any such facial challenges by the defendants to new allegations in the amended complaint be handled through an appropriate motion filed at the dispositive motions deadline – when the facts underlying this action will be much clearer.

Management Planning also alleges that certain of the allegations in the amended complaint are the type of "impertinent" and "scandalous" matter subject to a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The court has reviewed the additions to the complaint and does not believe any such motion would be successful.

For all these reasons, the motion for leave to amend is granted.

**II.   Motion for Judgment on the Pleadings**

Management Planning moves for judgment on the pleadings on Tribune Publishing's breach of fiduciary duty claim (claim three). A motion for judgment on the pleadings is governed by the standard governing a motion to dismiss.[15] Dismissal is appropriate when the

---

[15] *See, e.g., Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

plaintiff can prove no set of facts entitling the plaintiff to relief.[16] The courts accepts all well-pleaded allegations in the complaint as true and views them in the light most favorable to the plaintiff.[17]

Management Planning contends that no factual allegations in the Amended Complaint support the existence of a fiduciary duty between it and Tribune Publishing under New Jersey law. Under New Jersey law, a fiduciary duty exists where a plaintiff demonstrates that the relationship is "intrinsic" or "naturally inspired" or that the plaintiff placed trust and confidence in one in a dominant or superior position.[18] Tribune Publishing does not expressly allege that Management Planning's relationship with it is intrinsically fiduciary nor does it specifically allege that it placed trust and confidence in Management Planning and that Management Planning was in a superior position. Rather, Tribune Publishing alleges that Management Planning was to provide an independent appraisal and comply with professional standards. Additionally, Tribune Publishing alleges:

> The duties owed by an appraiser and those who rely on his work are those of a fiduciary. The Principles of Appraisal Practice of the American Society of Appraisers, which [Management Planning] agreed would govern its engagement with Tribune Publishing, recognize such a fiduciary relationship between an appraiser and those who rely on his or her work.[19]

The Principles provide:

---

[16] See id.

[17] See id.

[18] See McKelvey v. Pierce, 800 A.2d 840, 859 (N.J. 2002); Pascale v. Pascale, 549 A.2d 782, 788 (N.J. 1988).

[19] First Amd. Compl. at ¶ 88.

> Because of the specialized knowledge and abilities required of the appraiser which are not possessed by the layman, there has now come to be established a fiduciary relationship between him and those who rely upon his findings.[20]

Tribune Publishing interprets this provision to provide that a fiduciary relationship exists between an appraiser and his or her client.  Tribune Publishing argues that because it alleges Management Planning agreed to be bound by the Principles and they provide for such a fiduciary relationship, its complaint survives Management Planning's motion for judgment on the pleadings.

The court concludes that the Principles do not provide that a fiduciary relationship between an appraiser and his or her client is intrinsic per se.  Construing all the facts in favor of the plaintiff, however, the Principles conceivably support the allegation that, on a proper set of facts, a fiduciary relationship may exist between an appraiser and a client when the client specifically relies on the appraisal.  To be sure, the allegations in the First Amended Complaint are somewhat thin.  But under New Jersey law it appears that "[t]o succeed on a claim for breach of a fiduciary duty[,] a plaintiff must demonstrate that the relationship between the parties presumes a fiduciary duty, or *because of the circumstances* of the parties' specific relationship, a fiduciary relationship has arisen or can be implied."[21]  At this point, all of the circumstances of the parties' specific relationship have yet to be proven.  Giving the Tribune Publishing the

---

[20] *Forward to Principles of Appraisal Practice & Code of Ethics* (American Soc. of Appraisers Revised Jan. 1994).

[21] *Pine Belt Enters., Inc. v. SC&E Admin. Servs., Inc.,* No. Civ.A. 04-105(SRC), 2005 WL 2469672, at *3 (D. N.J. Oct. 6, 2005) (emphasis added).

benefit of the doubt, the court concludes that the breach of fiduciary duty claim survives the motion for judgment on the pleadings.

Finally, Management Planning contends that whether there is a fiduciary duty is a legal question. At some level, this is correct. But that legal question is best decided on a factual record that is fully developed. At this juncture, the court concludes simply that Tribune Publishing's claim as pleaded survives the motion for judgment on the pleadings so that a fuller factual record on this claim can be developed.

### III.   Motion to Dismiss or Stay

MediaNews moves to stay (or even dismiss) the breach of contract (claim two) and breach of fiduciary duty (claim three) claims against Management Planning, the asset claims (claims four, five, and six), and the closing claim (claim seven). MediaNews contends that efficient litigation requires that claim one be resolved first. Tribune Publishing agrees that the closing claim is before Judge Campbell in another case and therefore does not oppose dismissal of that claim here. The court therefore dismisses the closing claim without prejudice. At issue, then, is whether the court should stay (or even dismiss) any of the remaining claims.

Turning first to the appraisal claims, MediaNews contends that this court should stay the breach of contract and fiduciary duty claims because they are contingent on Tribune Publishing prevailing on claim one. Claim one seeks a declaration that Management Planning's final appraisal report cannot be used to calculate the exercise price for *The Tribune* assets under the option agreement because the appraisal was defective for various reasons. If this claim fails, it would appear to be difficult for Tribune Publishing to succeed on claims two and three, which

largely depend on the appraisal being defective.  MediaNews therefore urges the court to decide claim one, and only then turn to claims two and three.  Unsurprisingly, Management Planning supports MediaNews' view of the case.

In response, Tribune Publishing opposes the stay of the breach of contract and fiduciary duty claims.  It argues that the litigation will be most expeditiously concluded if it is allowed to proceed to trial on all these claims.  It notes that this case has been delayed by defendants' previous unmeritorious motions to dismiss, requiring the intervention of the Tenth Circuit.

Much of the dispute between the parties on how to proceed on these appraisal claims centers on the scope of Tribune Publishing's jury trial right.  MediaNews proceeds from the premise that there is clearly no right to a jury trial as to claim one (a declaratory judgment action), and Tribune Publishing agrees on that limited point.  Tribune Publishing, however, contends that as to the second and third claims, it does have a right to a jury trial and that to try only claim one to the court would be unwise and unconstitutional.

These arguments have been well-briefed by able counsel, but they are difficult to decide at this early juncture in the abstract.  The jury-trial issue may well turn, at least to some extent, on how this litigation progresses through discovery and dispositive motions.  More important, at this time, the court need not reach a final decision as to how to divide responsibility between the court and any jury.  The only question the court needs to decide *now* is how to organize discovery and other pretrial phases of the litigation.  Accordingly, the court will defer a final decision as to how to organize any ultimate trial on this matter, but will direct the parties to proceed through discovery as to liability on claims one, two, and three so that all these claims will be ready for

trial in September – whether it be before the court or the jury. So that the court may make a fully informed determination as to how to divide responsibilities between the court and a jury (if any), it will set out a briefing schedule for this issue when the matter is closer to trial.

The court notes, however, that damages issues on the appraisal claims could easily swamp the other claims in terms of time and expense. If the appraisal was for some reason invalid, tracing out all the collateral consequences of that invalidity promises to be a very difficult task. It makes more sense to determine, first, whether the appraisal was invalid before turning (if required) to damages resulting from any invalidity.

In reaching this conclusion, the court is mindful of the Tenth Circuit's holding that the breach of contract and fiduciary duty claims, including particular damage aspects of those claims, are ripe.[22] Obviously, this lower court does not dispute that conclusion in any way. However, this court must manage the litigation of even ripe claims in the most efficient manner.[23] It makes sense to structure the litigation in this case to rapidly determine the invalidity *vel non* of the appraisal before heading off on possibly far-reaching collateral consequences.

In light of these considerations, the court will stay all discovery and other proceedings on any damages issues arising out of these claims, pending a determination (if any) that Tribune Publishing is to prevail. In doing so, the court realizes that it may be difficult to cleanly separate "liability" issues from "damages" issues on claims two and three. However, the Tenth Circuit

---

[22] *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.*, 454 F.3d 1128, 1140-41 (10th Cir. 2006).

[23] *See, e.g., Harsel Springs Ranch of Colo., Inc., v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002).

has already held that "[p]roof of actual damages is not an element of Tribune Publishing's breach of contract claim."[24]  And while the Tenth Circuit reserved decision on whether damages are an element of Tribune Publishing's breach of fiduciary claim,[25] it described the damages at issue as Tribune Publishing's opportunity to "participate in the appraisal process as defined in the Option Agreement and Apprisal Agreement" and further loss of income.[26]  These issues are sufficiently distinct that staying further proceedings on them (at least in this case) is both feasible and appropriate.

MediaNews also contends that this court should stay the asset claims (claims four, five, and six) because they are likely to be decided in the AT&T case and because they are dependent on Tribune Publishing prevailing on the appraisal claims (claims one, two, and three).  In principle, MediaNews is correct: litigation ought to proceed first only on the appraisal claims before turning to the asset claims.  Until there has been a determination of the validity or invalidity of the appraisal, it is difficult to litigate issues surrounding whether the value of the assets at issue in the appraisal have since declined in value.  For example, how would one measure a decline in "value" until the parties had determined the baseline value – that is, a fair appraised value?

In practice, however, MediaNews' categorization of one of the claims at issue here – claim four – seems inaccurate.  MediaNews calls this an "asset" claim.  To be sure, claim four

---

[24] *Salt Lake Tribune Publ'g Co.,* 454 F.3d at 1141.

[25] *Id.*

[26] *Id.*

seeks a specification of the Tribune assets as they existed on July 31, 2002.[27]  But as a practical matter, this determination may well be bound up with a determination of the fairness of the appraisal process.  Tribune Publishing may well allege (and the defendants may well dispute) that certain assets were improper excluded or included in the appraisal value.  Put another way, claim four is better viewed as an "appraisal" claim rather than an "asset" claim.  It makes no sense to stay further proceedings on this claim.  Accordingly, the court denies the motion for a stay as to claim four.

Turning to claims five and six, MediaNews' argument for a stay is sound.  Most, if not all, of the subjects of these claims appear to properly belong in the main litigation – the AT&T case.  Moreover, these asset claims are undeniably contingent on the outcome of the appraisal claims and seem involve collateral calculation of damages from an improper appraisal.  Whether Tribune Publish will prevail on its appraisal claims is, of course, uncertain now.  Therefore, judicially economy and the interests of justice are best served at this time by staying all proceedings regarding claims five and six.  After the appraisal claims have been decided, the court will be in a far better position to determine whether to transfer these remaining claims back to the AT&T case or otherwise handle them directly in this case.

## SCHEDULING ORDER

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the court received the Attorneys' Planning Report filed by counsel.  The court appreciates counsel's efforts to devise a jointly-agreeable schedule and understands the differences in perspective on the schedule, which

---

[27] First Am. Compl. at ¶ 105.

were driven by differences on the pending motion to stay. Having resolved the motion to stay largely in the defendants' favor, the court also adopts a schedule that essentially tracks the defendants' proposed schedule. (Notably, the court increased the number of depositions slightly, from 10 to 12 and directed the defendants to add any new parties within 30, rather than 60, days.) Other changes were made in light of the discussion with counsel at the oral argument on this case. Accordingly, the following matters are scheduled. The times and deadlines set forth herein may not be modified without the approval of the court and on a showing of good cause.

**\*\*ALL TIMES 4:30 PM UNLESS INDICATED\*\***

1. **PRELIMINARY MATTERS**                                                            **DATE**

    Nature of claims and any affirmative defenses:

    The nature of the claims and affirmative defenses is set forth in the Attorneys' Planning Meeting Report jointly filed by the parties on November 30, 2006.

    a.  Was Rule 26(f)(1) Conference held?                    Yes.       11/16/06

    b.  Has Attorney Planning Meeting Form been submitted?    Yes.       12/04/06

    c.  Were 26(a)(1) initial disclosures completed?          Yes.       11/30/06

2. **DISCOVERY LIMITATIONS**                                                          **NUMBER**

    a.  Maximum Number of Depositions by Plaintiff                        12

    b.  Maximum Number of Depositions by Defendants                       12 (total)

    c.  Maximum Number of Hours for Each Deposition                       7
        (unless extended by agreement of parties)

    d.  Maximum Interrogatories by any Party to any Party                 25

|   |   |   |   |
|---|---|---|---|
| | e. | Maximum requests for admissions by any Party to any Party | 25 (each) |
| | f. | Maximum requests for production by any Party to any Party | 25 (each) |
| **3.** | **AMENDMENT OF PLEADINGS/ADDING PARTIES**[28] | | **DATE** |
| | a. | Last Day to File Motion to Amend Pleadings | Plaintiff: 12/15/2006<br>Defendant:<br>60 days after the pleading to be amended |
| | b. | Last Day to File Motion to Add Parties | Plaintiff: 12/15/2006<br>Defendant:<br>30 days after the pleading to be amended |
| **4.** | **RULE 26(a)(2) REPORTS FROM EXPERTS** | | **DATE** |
| | a. | Plaintiff's Expert Reports | 3/21/2007 |
| | b. | Defendants' Rebuttal Reports | 4/17/2007 |
| | c. | Plaintiff's Rebuttal Reports | 5/1/2007 |

| | | | **TIME** | **DATE** |
|---|---|---|---|---|
| **5.** | **OTHER DEADLINES** | | | |
| | a. | Discovery to be completed by: | | |
| | | Fact discovery | | 3/14/2007 |
| | | Expert discovery | | 5/7/2007 |
| | b. | Final date for supplementation of disclosures and discovery under Rule 26(e) | | 2/28/2007 |
| | c. | Dispositive motions | | |

---

[28] Counsel must still comply with the requirements of Fed. R. Civ. P. 15(a).

|  |  |  |  |  |
|---|---|---|---|---|
|  | (I) | Filing |  | 5/14/2007 |
|  | (ii) | Memoranda in opposition |  | 6/1/2007 |
|  | (iii) | Reply memoranda |  | 6/15/2007 |
| d. | Hearing on dispositive motions | | 2:30 p.m. | 7/19/2007 |
| e. | Briefing on right to jury trial | | | |
|  | Plaintiff's memorandum in support | | | 7/25/2007 |
|  | Defendants' memoranda in opposition | | | 8/3/2007 |
|  | Plaintiff's reply memorandum | | | 8/10/2007 |

**6.   SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION                                   DATE**

    a.    Referral to Court-Annexed Mediation:                                                                 N.A.

    b.    Referral to Court-Annexed Arbitration:                                                               N.A.

    c.    Evaluate case for Settlement/ADR on                                                                N.A.

    d.    Settlement probability:                                                                                        Poor.

**7.   TRIAL AND PREPARATION FOR TRIAL                              TIME                   DATE**

    a.    Rule 26(a)(3) Pretrial Disclosures[29]

            Plaintiff                                                                                                                  08/10/07

            Defendant                                                                                                            08/10/07

    b.    Objections to Rule 26(a)(3) Disclosures
        7 days after service of pretrial disclosures

---

[29] Any demonstrative exhibits or animations must be disclosed and exchanged with the 26(a)(3) disclosures.

|   |   |   |   |   |
|---|---|---|---|---|
| c. | Special Attorney Conference[30] on or before | | | 08/1/07 |
| d. | Settlement Conference[31] on or before | | | N.A. |
| e. | Final Pretrial Conference | | 3:00 p.m. | 08/22/07 |
| f. | Trial | Length | | |
|    | Trial | 9 days | 8:00 a.m. | 09/4/07 – 09/14/07 |

**8.    OTHER MATTERS**

Counsel should contact chambers staff regarding *Daubert* motions to determine the desired process for filing and hearing of such motions. All such motions, including Motions in Limine should be filed well in advance of the Final Pretrial. Unless otherwise directed by the court, any challenge to the qualifications of an expert or the reliability of expert testimony under *Daubert* must be raised by written motion before the final pre-trial conference.

---

[30] The Special Attorney Conference does not involve the court. Counsel will agree, if appropriate, on voir dire questions, jury instructions, a pretrial order and discuss the presentation of the case. Witnesses will be scheduled to avoid gaps and disruptions. Exhibits will be marked in a way that does not result in duplication of documents. Any special equipment or courtroom arrangement requirements will be included in the pretrial order.

[31] The Settlement Conference does not involve the court unless a separate order is entered. Counsel must ensure that a person or representative with full settlement authority or otherwise authorized to make decisions regarding settlement is available in person or by telephone during the Settlement Conference.

**9.      REDUCING DISCOVERY DISPUTES**

The court understands that it is setting a tight schedule, with little room for "slippage." The court is optimistic about maintaining this schedule because of the high quality of counsel in this matter – as well as the sheer number of attorneys available for all parties.

Nonetheless, the court understands that it has tried to set up boundaries on the litigation (staying claims five and six and staying damages issues on the other claims) that may generate discovery disputes about which discovery requests are "in bounds" and which are "out of bounds." Accordingly, to expeditiously provide as much clarity to counsel as possible on these boundaries, the court directs the parties to meet and confer rapidly on their anticipated discovery requests in this case. If that produces disputes about these boundaries, the court directs the parties to file a motion to compel or other appropriate motion outlining the anticipated or actual discovery dispute by December 14, 2006. A response is then due on December 20, 2006. The court will rule rapidly on these motions. The court also directs the parties to produce a standard protective order to cover confidential materials in this case by December 20, 2006.

## CONCLUSION

For the reasons given above, the court HEREBY GRANTS Tribune Publishing's Renewed Motion for Leave to Amend the Amended Complaint (#176); DENIES Management Planning's Motion for Judgment on the Pleadings Regarding the Third Claim for Relief (#182); and GRANTS IN PART AND DENIES IN PART MediaNews' Motion to Dismiss or Stay (#178). The court dismisses the seventh claim in the First Amended Complaint without prejudice. The court also sets a schedule for all matters in this case.

SO ORDERED.

Dated this 12th day of December, 2006.

BY THE COURT:

_____
Hon. Paul G. Cassell
U.S. District Judge