IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE TRIBUNE PUBLISHING COMPANY, LLC,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>MANAGEMENT PLANNING, INC.; MEDIANEWS GROUP, INC.; AND KEARNS-TRIBUNE, LLC,<br><br>Defendants. | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND DENYING WITHOUT PREJUDICE MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br>Case No. 2:03-CV-00565 PGC |

Plaintiff Salt Lake Tribune Publishing, LLC has brought three actions – case numbers 2:03-CV-00565 (the Management Planning case), 2:00-CV-00936 (the AT&T case), and 2:03-CV-923 (now closed), that involve a long-running dispute over Tribune Publishing's right to purchase assets of *The Salt Lake Tribune*, the largest newspaper in Utah, under an option agreement (the Option Agreement) between Tribune Publishing and defendant Kearns-Tribune, LLC's predecessor-in-interest. These cases were recently consolidated before the undersigned judge. Familiarity with the court's prior orders is assumed in this order.

At issue currently before the court is Tribune Publishing's motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction barring defendants MediaNews Group, Inc. and Kearns-Tribune, LLC, (collectively MediaNews) from selling three buildings referred to as the Tribune Building, the Regent Street Property, and the Urbanite Facility (collectively the Downtown Properties) and equipment housed in those buildings that Tribune Publishing claims are Tribune assets.  In its memoranda, Tribune Publishing contends that if it prevails in this action, it will be entitled to acquire the Downtown Properties and equipment.

The resolution of the preliminary injunction motion has been greatly simplified by recent developments.  During a status/scheduling hearing on April 18, 2007, Tribune Publishing advised the court that it no longer intended to seek a new closing under the Option Agreement to purchase *The Salt Lake Tribune*, although it may seek to acquire certain Tribune assets.  In light of this new position, injunctive relief is not warranted here because Tribune Publishing has failed to demonstrate not only likelihood of success on the merits and but also that it will suffer irreparable injury without an injunction.

Tribune Publishing also seeks partial summary judgment on its fourth claim in this case (the Management Planning case).  The fourth claim seeks an appraisal of the value of the Tribune assets as of July 31, 2002,[1] an appraisal that would have been useful during a new closing.  The court has previously bifurcated proceedings in the Management Planning case.  The parties are currently proceeding to litigate liability on the appraisal claims, but any proceedings regarding

---

[1]*See* Fourth Am. Compl. at 34.

damages on these claims was stayed.  In light of recent briefing and events, the fourth claim now appears to be properly grouped the damages issues.  The court therefore denies without prejudice the motion for partial summary judgment of this claim as unripe, leaving it to be raised later if appropriate.  The court will also stay all further proceedings on this claims.

## BACKGROUND

The background of this matter is set forth more fully in earlier decisions and order of the Tenth Circuit and this court.   For purposes of the pending motions, it is relevant to note that in 1997 Kearns-Tribune and Tribune Publishing entered into an agreement providing Tribune Publishing with the right to manage *The Salt Lake Tribune* until July 31, 2002, along with an agreement (the Option Agreement) providing that Tribune Publishing had the right on August 1, 2002 to "purchase all, and not less than all, of the assets listed on Exhibit A hereto (the 'Tribune Assets'), which assets shall constitute all of the assets used, held for use or usable in connection with the operation and publication of *The Salt Lake Tribune*."[2]   Although the assets were to be listed in Appendix A to the agreement, Appendix A was never attached.  The Option Agreement provided that the price for the assets was to be determined through an appraisal process.  Tribune Publishing paid $1,000,000 for this option.

On August 2, 2002, Tribune Publishing exercised its option to purchase the Tribune assets.  In September 2002, both parties' appraisers served their reports.  Because the higher appraisal was 110% of the lower appraisal, the Option Agreement required a third-party appraisal to set the price at which the option could be exercised.

---

[2]Option Agreement at §1.

The Option Agreement provided that the closing date was to be within 120 days of exercise.   As the parties were selecting a third appraiser, the court tolled the closing date.  In November 2002, defendant Management Planning, Inc. was selected as the third-party appraiser. On June 11, 2003, Management Planning submitted its final report, setting the price for exercising the option higher than Tribune Publishing anticipated.  On June 24, 2003, Tribune Publishing filed this case (the Management Planning) case, seeking among other things a declaration that Management Planning's appraisal was invalid and "declaring that a new appraisal process using all new appraisals, a new valuation date, and new selection of a third appraiser must be conducted pursuant to the Option Agreement."[3]

This court (Stewart, J.) then granted the defendants' motion to dismiss this case.  The court then lifted the tolling order and set the closing for October 10, 2003.  Tribune Publishing moved to reinstate the tolling order while it exhausted its appeal, but the court denied that motion.  Thus, closing was set for October 10, 2003.  The Tenth Circuit later reversed the granting of the motion to dismiss and reinstated this action.

As this court defined the parties' obligations, at closing MediaNews was to transfer the Tribune assets and Tribune Publishing was to wire funds.  While the dispute about the validity of Management Planning's appraisal was still pending, Kearns-Tribune offered to place $100 million dollars in escrow in the event Management Planning's appraisal was declared invalid. Nonetheless, Tribune Publishing did not close, as this litigation regarding the appraisal continued.

---

[3]Complaint at 29.

In the meantime, MediaNews and its partner under a Joint Operating Agreement, Deseret News Publishing Co., explored the prospects for publishing *The Salt Lake Tribune* and *The Deseret Morning News* in a new, more modern facility.  Ultimately, they developed such a facility, and in late 2005 or early 2006 they moved publication of the papers to the new facility.

Under the Joint Operating Agreement, Kearns-Tribune and Deseret News hold two properties involved in the production of the papers (the Regent Street Property and the Urbanite Facility) as tenants in common.  A third property – the Tribune Building – is held by Kearns-Tribune alone.  That building served as the Tribune headquarters from 1937 to 2005 and is on the National Register of Historic Places.  However, these two properties (referred to by the parties as the "Downtown Properties") have been effectively abandoned by the papers.

In late December 2006, MediaNews advised Tribune Publishing that it intended to sell the Downtown Properties.  Tribune Publishing then filed the pending motion for a preliminary injunction blocking any such sale.  The gravamen of the preliminary injunction motion (at least as the court understood it initially) was that the Downtown Properties should be held for Tribune Publishing so that it could reestablish operations of *The Salt Lake Tribune* in these very buildings if it prevailed in this suit.  Without such an injunction, Tribune Publishing argued, the defendants "will make it impossible for Tribune Publishing to obtain ownership of its rights under the Option Agreement of *any* production facility with which to publish a newspaper."[4]

MediaNews opposed the motion for the preliminary injunction, contending that Tribune Publishing has not established that it is likely to prevail on the merits.  MediaNews also

---

[4]Plaintiff's Reply in Support of its Motion for Preliminary Injunction at 3.

contended that Tribune Publishing had not established that it will suffer irreparable harm without an injunction, given that the Downtown Properties are no longer used to publish *The Salt Lake Tribune*. And Tribune Publishing was well aware that MediaNews intended to move production to a new, modern facility but failed to appeal this court's decision declining to toll closing of the Option Agreement. Moreover, Media News contended that the public interest is not served by requiring that the properties remain vacant in this era of downtown redevelopment.

The Deseret News sought to intervene in this action to oppose the preliminary injunction motion for similar reasons advanced by MediaNews. The court denied the motion to intervene, but allowed Desert News to file an amicus brief regarding the motion for a preliminary injunction.

In addition to moving for a preliminary injunction, Tribune Publishing also moved for partial summary judgment on its fourth claim. MediaNews opposed that motion.

## DISCUSSION

I.  **Tribune Publishing has not Met its Burden to Show that it is Entitled to a Preliminary Injunction.**

    A.    <u>The Requested Injunction Is Not a "Disfavored Injunction."</u>

At the outset, it is useful to note that Tribune Publishing's Motion for a Preliminary Injunction must be decided under the conventional rules pertaining to injunctions. The Tenth Circuit recently explained that three types of preliminary injunctions are "specifically disfavored" and, as such, "must be more closely scrutinized to assure that the exigencies of the case support

the granting of a remedy that is extraordinary even in the normal course."[5]  Those three types are:
(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and
(3) preliminary injunctions that afford the movant all the relief that it could recover at the
conclusion of a full trial on the merits.[6]

      The parties do not contend that the injunction Tribune Publishing seeks is mandatory or
will afford Tribune Publishing all the relief that it could recover at trial on the merits.  Tribune
Publishing contends that the preliminary injunction seeks to preserve – not alter – the status quo
by preventing MediaNews from selling core assets at the center of this lawsuit.  "[T]he status quo
is the last uncontested status between the parties which preceded the controversy until the
outcome of the final hearing."[7]  In this case, the last uncontested status proceeding this
controversy was at the time Tribune Publishing was exercising its option to purchase the assets
under the Option Agreement.  At that time, Kearns-Tribune held the Downtown Properties under
the Joint Operating Agreement.   Accordingly, the injunction would not alter *that* status quo and,
therefore, the injunction is not a disfavored.

─────

─────────────

     [5]*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th
Cir. 2004) (en banc).

     [6]*See id.* at 977.

     [7]*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quotations and citations
omitted).

      B.      <u>Tribune Publishing is Not Entitled to a Preliminary Injunction.</u>

Tribune Publishing bears the burden of establishing its entitlement to a preliminary injunction under Rule 65.[8]  "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[9]  "[C]ourts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case . . . ."[10]

A party seeking a preliminary injunction under Rule 65 must prove that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damages the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.[11]

The Tenth Circuit has instructed that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[12]  The Circuit has further explained, however, that when the moving party has established that the three harm factors tip decidedly in its favor, the probability of success requirement is relaxed. [13]  In such cases, the movant need only show

---

[8]*See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

[9]*Schrier*, 427 F.3d at 1258 (quotations and citation omitted).

[10]*O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 977.

[11]*Heideman,* 348 F.3d at 1188 (alterations in original) (quotations and citations omitted).

[12]*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotations and citation omitted).

[13]*Heideman*, 348 F.3d at 1189.

questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation.[14]  In this case, Tribune Publishing has failed to establish both that irreparable injury and likelihood of success factors weigh in its favor.

        *1.    Irreparable Injury*

The concept of irreparable injury "does not readily lend itself to definition, nor is it an easy burden to fulfill."[15]  Case law makes clear, however, "that the injury 'must be both certain and great, and that it must not be merely serious or substantial.'"[16]

Any injury to Tribune Publishing in this case is not certain and great, but rather speculative.  During the April 18, 2007, status/scheduling hearing, Tribune Publishing changed the course of this litigation and advised the court for the first time that it no longer seeks another closing under the Option Agreement to acquire *The Salt Lake Tribune* (i.e., the daily newspaper that circulates throughout Utah).  Tribune Publishing explained that it nonetheless continues to seek breach of contract remedies that might include acquiring such things as rights to the name *The Salt Lake Tribune* and other assets such as the newspaper archives.  In the April 18, 2007, hearing Tribune Publishing's counsel stated also that "we still very much want the court to enjoin a sale [of the Downtown Properties] . . . so they can be available as part of the package of remedies we can get at the end of the proceedings."[17]  Tribune Publishing essentially seeks to

---

[14]*See id.* at 1189.

[15]*Dominion Video Satellite, Inc.*, 356 F.3d at 1262 (quotations and citation omitted).

[16]*Id.* (quoting *Prairie Band of Potawotomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

[17]April 18, 2007 Status Conference Hr'g Tr. at 42.

preserve a smorgasbord of remedies in the pending action without explaining which of these remedies it will dine on.

In light of its shift in position, Tribune Publishing has eliminated a basis (if any previously existed) for the preliminary injunction as pleaded.  The basis for Tribune Publishing's presently-filed motion for a preliminary injunction was that it needed the Downtown Properties to publish *The Salt Lake Tribune*.  But Tribune Publishing no longer is committed to publishing *The Salt Lake Tribune*.  Indeed, as the court understands the current posture of the case, Tribune Publishing has not even firmly commit to purchase the Downtown Properties should it prevail in this lawsuit.  Irreparable injury is hard to discern from such contingent possibilities.

Tribune Publishing further argues that pursuant to Section 13 of the Option Agreement, MediaNews has already agreed that the breach of the agreement to sell the assets to it constitutes irreparable harm.  But it remains to be established that MediaNews breached its agreement. More important, the Option Agreement's provisions – in particular, Section 13 – were negotiated in the context of an agreement regarding ownership of *The Salt Lake Tribune*.  Because Tribune Publishing is no longer seeking ownership of *The Salt Lake Tribune* under the Option Agreement, any discussion of irreparable injury there is of little use in this lawsuit as currently configured.

Tribune Publishing's strongest argument is that the sale of real property during the pendency of a lawsuit about that property is often regarded as per se irreparable harm.  Tribune Publishing contends that the real property here is uniquely irreplaceable, as *The Salt Lake*

-10-

*Tribune* has historically been published and distributed out of the buildings and the Tribune Building is on the National Register of Historic Places.

The court recognizes the general rule that the sale of real property subject to a lawsuit is irreparable harm.[18]  But that rule has been established in the context of lawsuits involving two competing claimants trying to own or control the same piece of property.  In this suit, Tribune Publishing has not firmly committed to buying the Downtown Properties.  Moreover, the Appendix to the Option Agreement did not list the Downtown Properties – which raises at least some question about whether these particular properties are subject to this lawsuit (particularly in light of the Statute of Frauds).  Even assuming that the Downtown Properties are encompassed in this suit, the center of gravity of this suit (at least as the court understood it until recently) was about the right to control of a functioning newspaper.  To be sure, the Option Agreement focuses on sale of various assets, apparently to avoid tax consequences.  But even a casual perusal of the Option Agreement makes clear that it was designed not to obtain parcels of property but rather a circulating newspaper – i.e., *The Salt Lake Tribune*. The fact that, until recently, this newspaper happened to be housed in certain buildings (even historic buildings) is a peripheral matter to the functioning of the paper.

For all these reasons, the court concludes that Tribune Publishing has failed to establish that it will suffer irreparable harm without an injunction.

---

[18]*See, e.g., United Church of the Medical Ctr. v. Medical Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982).

2.      *Likelihood of Success on the Merits*

The court also considers whether Tribune Publishing has shown "a substantial likelihood of success on the merits."[19]  Tribune Publishing has failed to carry *its* burden on this point given the limited briefing on this issue.

To state the obvious, this lawsuit is quite complicated and both parties firmly maintain that they will prevail.  Yet in its motion for a preliminary injunction, Tribune Publishing spends only a half-page footnote in its opening memorandum and one page in its reply strenuously but tersely outlining its position on the merits of the liability claims in the Management Planning case.[20]  MediaNews defendants counter with equal fervor that they will prevail at trial.[21]  On the basis of this quite limited briefing, it is impossible for the court to say who will prevail at trial in this long-running suit.  It is, however, easy for the court to discern who must shoulder the burden of demonstrating likelihood of success on the merits for purposes of the preliminary injunction motion – Tribune Publishing.

In contending that it is substantially likely to prevail on the merits, Tribune Publishing claims that it is the owner of the Downtown Properties by equitable conversion.  But the main chain of logic for this argument (at least as the Second Amended Complaint currently stands) is that Management Planning's appraisal was invalid and that Tribune Publishing is therefore entitled to a new closing – a closing that it has now renounced.  In any event, the court or a jury

---

[19]*Heideman,* 348 F.3d at 1188 (quotations and citations omitted).

[20]*See* Plaintiff's Reply in Support of its Motion for Preliminary Injunction at 6.

[21]*See* MediaNews' Opposition to Plaintiff's Motion for Preliminary Injunction at 9-13.

must first determine whether the appraisal is invalid before Tribune Publishing may acquire any assets.  Given the limited briefing on this point, Tribune Publishing has not carried *its* burden to show that it is likely to prevail on its appraisal liability claims.

3.     *Balance of Harms.*

The court also considers whether "the threatened injury . . . outweighs whatever damages the proposed injunction may cause the opposing party."[22]  Tribune Publishing contends that the sale of the Downtown Properties would undermine this court's ability to fashion an appropriate remedy if the jury returns a plaintiff's verdict.  However, as explained previously, it is not completely clear that, even if the jury returns a verdict in its favor, Tribune Publishing will now purchase  the Downtown Properties.  Weighed against this speculative harm is harm to the defendants in terms of carrying costs of the properties – apparently in the neighborhood of hundreds of thousands of dollars during the duration of the proposed injunction.  The possibility that the real estate market might take a turn for the worse while the defendants were forced to hold the properties must be weighed in the balance, particularly where Tribune Publishing proposes that the court should enter the injunction without requiring it to post any kind of bond to protect the defendants from such losses.[23]   The court concludes that the balance of harms tips in favor of the defendants.

---

[22]*Heideman,* 348 F.3d at 1188 (quotations and citations omitted).

[23]Plaintiff's Reply in Support of its Motion for Preliminary Injunction at 10.

4.      *Public Interest*

The court finally considers whether the injunction, if issued, would be adverse to the public interest.[24]  Tribune Publishing's pleadings contend that the injunction would serve the public interest by safeguarding these assets of historic importance to the community until the equitable owner, which is committed to preserving them and their historical significance, assumes ownership.   But these written claims now ring hollow, given that Tribune Publishing has, at oral argument, not firmly committed to acquiring the properties (much less, to what use it put the properties if it acquired them).  Moreover, given that the Tribune Building is on the historic register, any new owner will presumably be required to follow applicable rules protecting buildings with historic character.  MediaNews also argues persuasively that the preliminary injunction would harm the public interest by forcing the Downtown Properties to remain vacant while revitalization of downtown properties is at heightened concern.  The court takes judicial notice of the fact that a number of downtown buildings within walking distant of the courthouse are currently unoccupied,[25] and creating additional, court-mandated vacancies in this same area would not seem to be good for the citizens of Salt Lake City.  Finally, in light of the First Amendment, the court should also be wary about intruding into the internal affairs of a newspaper publishing company and ordering it to bear additional costs by maintaining certain

---

[24]*See, e.g., Heideman*, 348 F.3d at 1188.

[25]If Tribune Publishing believes that it is not proper for the court to take judicial notice of this fact and further that this fact is not true, it is directed to file a motion to reconsider with appropriate supporting materials within 14 days of the date of this order.

buildings.  For all these reasons, the court finds that an injunction would be adverse to the public interest.

In short, the court concludes that Tribune Publishing has not carried its burden to show that it should obtain a preliminary injunction.  Therefore Tribune Publishing Motion for a Preliminary Injunction is denied.

## II.     Tribune Publishing's Motion for Partial Summary Judgment on its Fourth Claim for Relief is Denied Without Prejudice.

Also pending before the court is Tribune Publishing's motion for partial summary judgment on its fourth claim in the Management Planning case.  That claims seeks a declaratory judgment that Tribune Publishing is entitled to a specification of all Tribune assets as of July 31, 2002.  In its motion, however, Tribune Publishing seeks a narrower declaration that the Downtown Properties and the equipment housed therein are Tribune assets that it is entitled to purchase at a new closing under the Option Agreement.

The court would be inclined to find at this juncture that material issues of fact exist as to whether the Downtown Properties are such assets.  During the April 18, 2007, hearing, however, Tribune Publishing advised the court that it no longer intends to seek a new closing.  The court has previously bifurcated proceedings in this case.  The court permitted the parties to proceed as to liability on the claims that the appraisal is invalid and whether Management Planning breached contractual or fiduciary duties –  claims one, two, and three in the Second Amended Complaint – as well claim four.  But the court stayed any proceedings regarding any damages on these claims. Having now more carefully reviewed this fourth claim in light of the pending motion for partial summary judgment, it is clear that this claim is of a piece with the damages claims, and should be

handled with those claims (or perhaps with the claims in the AT&T case).   In either event, the

motion for partial summary judgment on claim four is not ripe at this time.  Accordingly, the

court denies the motion for partial summary judgment without prejudice to refiling at an

appropriate later time.  The court will stay all further proceedings on the fourth claim, pending a

decision on liability in the Management Planning case.  The parties are directed to include claim

four as one of the items subject to discussion in their scheduling conference following the

decision on liability in the Management Planning case.

## CONCLUSION

Accordingly, the court HEREBY ORDERS that Tribune Publishing's Motion for

Preliminary Injunction (#232) is DENIED, its Motion for Partial Summary Judgment (#229) is

DENIED WITHOUT PREJUDICE, and its Motion to Expedite Briefing (#234) is DENIED AS

MOOT.   Further proceedings on claim four are stayed.

SO ORDERED.

DATED this 27th day of April, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

-16-