IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE TRIBUNE PUBLISHING COMPANY, LLC, | |
| Plaintiff, | ORDER DENYING TRIBUNE PUBLISHING'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT MOTIONS FOR SUMMARY JUDGMENT IN THE MANAGEMENT PLANNING CASE; DENYING TRIBUNE PUBLISHING'S MOTION FOR LEAVE TO SUPPLEMENT AND AMEND ITS FOURTH AMENDED COMPLAINT IN THE AT&T CASE; AND SCHEDULING MATTERS |
| vs. | |
| MEDIANEWS GROUP, INC. and KEARNS-TRIBUNE, LLC, et al., | Case Nos. 2:03-CV-00565 PGC 2:00-CV-00936 PGC |
| Defendants. | |

These diversity actions involve the long-running dispute between plaintiff Salt Lake

Tribune Publishing Co., LLC and the defendants over a management agreement and option to

buy the assets of *The Salt Lake Tribune*.  Familiarity with the Tenth Circuit's prior decisions and this court's prior rulings in these actions is assumed.

    For purposes of this order, however, the following procedural background is helpful.  In December 2000, Tribune Publishing filed Case No. 2:00-CV-00936 (the AT&T case) against AT&T Corp.; AT&T Broadband, LLC; Kearns-Tribune, LLC; and MediaNews Group, Inc. Unless otherwise indicated, the court refers to AT&T Corp. and AT&T Broadband, LLC collectively as AT&T; the court refers to Kearns-Tribune, LLC and MediaNews Group, Inc. collectively as MediaNews.  AT&T had entered into an agreement to sell Kearns-Tribune to MediaNews.  And Tribune Publishing was concerned that the sale would impair its rights under the Management Agreement and the Option Agreement to purchase *The Tribune* assets.  In August 2001, Deseret News Publishing Co., which co-owns *The Tribune* assets with MediaNews, was added as a defendant.

    Tribune Publishing's current iteration of its complaint in the AT&T case claims that the defendants breached or caused the breach of the Management and Option Agreements.  As initially filed, the Fourth Amended Complaint asserted claims for declaratory judgment, breach of contract, injunctive relief, specific performance, reformation, breach of commitment to sell, breach of covenant of good faith and fair dealing, interference with contract, interference with prospective economic relations, bad faith, and promissory fraud.  Although Tribune Publishing sought damages, it also sought specific performance of the Option Agreement, which provides that it is entitled "to purchase all, and not less than all" of *The Tribune* assets.[1]

    On March 27, 2002, the court granted summary judgment to AT&T and dismissed all

---

[1]Option Agreement ¶ 1.

claims against it with prejudice, except the claim for interference with prospective economic relations, which the court dismissed without prejudice as premature and speculative. Subsequently, the court also granted summary judgment on the reformation claim, dismissed in part the interference with contract claim, and dismissed without prejudice as premature the claim for interference with prospective economic relationships against the remaining defendants. Thus, now pending in the AT&T case before the court are the claims for declaratory judgment, breach of contract, injunctive relief, specific performance, breach of covenant of good faith and fair dealing, and interference with contract, asserted individually or collectively against defendants other than AT&T.

While the AT&T case was pending, Tribune Publishing exercised its right to purchase *The Tribune* assets under the Option Agreement. Because the parties were unable to agree on price, and the party-appraisals differed by more than a percentage amount specified in the Option Agreement, the parties retained a third-party appraiser, Management Planning, Inc., to assist in setting the price as required by the Option Agreement. Dissatisfied with the process and Management Planning's final appraisal report, on June 24, 2003, Tribune Publishing filed Case No. 2:03-CV-00565 PGC (the Management Planning case) against Management Planning, Kearns-Tribune, and MediaNews. In its Second Amended Complaint in the Management Planning case, Tribune Publishing seeks a declaration that the appraisal by Management Planning was invalid, asserts that Management Planning breached contractual and fiduciary duties to Tribune Publishing in conducting the appraisal (the appraisal claims); seeks a declaration of Tribune Assets and an abatement for harm and diminution in value of those assets (the asset claims); and sought a declaration that it is entitled to a closing under the Option

Agreement (the closing claim).  This court dismissed the closing claim without prejudice because it was presented in the AT&T case.  Because the asset claims are dependent on the appraisal claims, this court stayed the asset claims pending a verdict on the appraisal claims.  The appraisal claims are set for a nine-day trial beginning on September 4, 2007, with the issue of damages to be determined (if necessary) after the trial.

The cases are now before the court on: (1) the defendants' motions for summary judgment on the claim for declaratory judgment (claim one), Management Planning's motion for summary judgment on the claims for breach of contract (claim two) and breach of fiduciary duty (claim three), and Tribune Publishing's motion for partial summary judgment on the defendants' unclean hands defense in the Management Planning case; (2) Tribune-Publishing's motion to supplement and amend the Fourth Amended Complaint in the AT&T case; and (3) for scheduling.  The court concludes that material issues of fact preclude summary judgment on all but the breach of fiduciary duty claim (claim three) against Management Planning.  The court therefore denies Tribune Publishing's motion for partial summary judgment, denies the defendants' motions for summary judgment on claim one, denies Management Planning's motion for summary judgment on claim two, and grants Management Planning's motion for summary judgment on claim three in the Management Planning case.  Because Tribune Planning's motion to amend and supplement its Fourth Amended Complaint is untimely, unduly prejudicial, and futile, among other things, the court denies that motion in the AT&T case. Because the Management Planning case is now headed for trial, the court establishes final pretrial and post-trial scheduling orders.  To facilitate resolution of the AT&T case, the court also establishes a scheduling order in that case.

**DISCUSSION**

I.     **CROSS-MOTIONS FOR SUMMARY JUDGMENT IN THE MANAGEMENT PLANNING CASE**

Tribune Publishing moves for partial summary judgment on the defendants' unclean hands defense.  The defendants move for summary judgment on Tribune Publishing's claim for declaratory judgment (claim one) and Management Planning moves for summary judgment on Tribune Publishing's claims for breach of contract (claim two) and breach of fiduciary duty (claim three).

In deciding whether to grant motions for summary judgment, the court resolves all factual disputes and draws all reasonable inferences in favor of the nonmoving party.[2]  Thus, in regard to the defendants' cross-motions for summary judgment, the court "'construe[s] all inferences in favor of [Tribune Publishing,] the party against whom the motion under consideration is made.'"[3]  Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4]

So construing all reasonable inferences, the court concludes that issues of material fact preclude summary judgment on the claims for declaratory judgment and for breach of contract and on the defendants' unclean hands defense.  During the motion hearing, the court reserved ruling on the motions for summary judgment on the evident partiality and fraud allegations.

---

[2]*See, e.g., Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 660 (10th Cir. 2007).

[3]*Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (quoting *Anderson v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

[4]Fed. R. Civ. P. 56(c).

While Tribune Publishing's case may be thin, the court is satisfied that material issues of fact

exist on these issues.  Based upon this determination and for the reasons stated from the bench,

the court DENIES summary judgment on these claims and the defense.

    With regard to the breach of fiduciary duty claim, the court agrees that under New Jersey

law, Management Planning had no fiduciary duty to Tribune Publishing.  Under New Jersey law,

> [t]he essence of a fiduciary relationship is that one party places trust and confidence
> in another who is in a dominant or superior position.  A fiduciary relationship arises
> . . . when one person is under a duty to act for or give advice for the benefit of
> another on matters within the scope of their relationship.[5]

New Jersey courts have noted circumstances that give rise to such a relationship.   First, New

Jersey recognizes that certain relationships are fiduciary or presumed fiduciary, such as principal

and agent or attorney and client.[6]  Tribune Publishing, however, cites no New Jersey authority

holding that an appraiser relationship is fiduciary as a matter of law or is presumed fiduciary.

And "elements that give rise to an agency relationship – the authorization to the agent to perform

functions on behalf of the principal, the agent's manifestation of consent . . . , the ability to

control the agent, and the third party's reliance on the agent's apparent authority to act for the

principal"are not present here.[7]  Although Tribune Publishing had a contractual relationship with

Management Planning, Tribune Publishing offers no evidence that Management Planning could

act or was acting on behalf of Tribune Publishing nor that Tribune Publishing could control

---

[5]*F.G. v. MacDonnell*, 696 A.2d 697, 703-04  (N.J. 1997).

[6]*See Marchitto v. Cent. R. Co. of N.J.,* 88 A.2d 851, 857 (N.J. 1952) (overruled in part on
other grounds by *Donnelly v. United Fruit Co.*, 190 A.2d 825 (N.J. 1963)); *United Jersey Bank v.
Kensey,* 704 A.2d 38, 44 (N.J. Super. Ct. App. Div.1997).

[7]*Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co.*, 634 A.2d 90, 95 (N.J.
1993).

Management Planning.

Second, a fiduciary relationship may arise when another party places a trust or confidence in the another in a dominant position, or because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence is necessarily implied.[8]  In the appraisal agreement, Management Planning touted its expertise in valuing newspapers, agreed to follow professional standards, and to exercise its professional judgment in appraising *The Tribune*.  Tribune Publishing, however, points to no evidence indicating that *it* expressly reposed trust and confidence in Management Planning when it engaged Management Planning.  Although Management Planning's president attested that Tribune Publishing placed trust and confidence in it, the surrounding circumstances do not indicate that he was referring to the type of confidence and trust inherent in a fiduciary relationship.  Only a poor business owner would say that its customers did not have confidence in it or trust it – but that hardly converts every business into a fiduciary for its customers.  Additionally, Tribune Publishing has not produced evidence creating a material issue of fact as to whether Management Planning exercised a dominant position.  Rather, the evidence shows that Tribune Publishing negotiated the appraisal agreement and dealt with Management Planning at arms length (at the very least).  Indeed, Tribune Publishing used its own expert appraiser to carefully scrutinize and evaluate Management Planning's actions.  Thus, Management Planning could hardly be said to be dominant position.  Indeed, if anything, the opposite was true (as demonstrated by the resources that Tribune Publishing has since devoted to upsetting Management Planning's appraisal).

---

[8]*McKelvey v. Pierce,* 800 A.2d 840, 859-60 (N.J. 2002); *United Jersey Bank,* 704 A.2d at 44.

Finally, although Tribune Publishing and MediaNews provided confidential business information to Management Planning, there is no indication that Management Planning improperly disclosed such information.

Third, New Jersey recognizes that fiduciary relationships may arise when contracts or transactions are intrinsically fiduciary.[9]  Tribune Publishing points to no New Jersey authority that holds that an appraisal agreement is intrinsically fiduciary.  Nonetheless, the appraisal agreement here required Management Planning to follow professional appraisal standards, which standards recognize that a fiduciary duty relationship exists to laymen who rely upon an appraiser's findings.  As indicated above, Tribune Publishing was far from a layman.  It relied upon its own expert appraiser to assess every jot and jiggle of Management Planning's appraisal.  Additionally, Tribune Publishing has challenged, rather than relied upon Management Planning's findings – and, indeed, Tribune Publishing was poised from the outset to launch such a challenge if the appraisal was not to its liking.

Because the undisputed facts and evidence do not establish a fiduciary relationship as a matter of New Jersey law, the court dismisses this claim with prejudice.  Accordingly, the court GRANTS summary judgment to Management Planning on this claim.

With regard to all remaining claims, for the reasons stated from the bench, the court OTHERWISE DENIES all pending motions for summary judgment.

---

[9]*See id.*

II.     **MOTION TO AMEND OR SUPPLEMENT THE FOURTH AMENDED COMPLAINT IN THE AT&T CASE**

Pursuant to Rule 15(a) and (d) of the Federal Rules of Civil Procedure, Tribune Publishing seeks to supplement its Fourth Amended Complaint to add factual allegations setting forth events since the filing of the Fourth Amended Complaint and to add claims for relief based upon those events.  Defendants AT&T, Kearns-Tribune, MediaNews, and Deseret News oppose the motion.  Before addressing the merits, the court provides background relevant to the motion.

*A.     Background*

In brief, Tribune Publishing's Fourth Amended Complaint in the AT&T case (the complaint currently before the court) seeks specific performance of the Option Agreement.  In that complaint, Tribune Publishing ultimately seeks another closing so that it will have an opportunity to purchase *The Tribune* assets.  In proposing to supplement and amend the complaint, Tribune dramatically shifts position.  Tribune Publishing asserts that the defendants have made performance of the Option Agreement impossible.  Tribune Publishing therefore seeks to amend its complaint to pursue some unspecified partial specific performance and damages.

In support of this change in theory and remedy, Tribune proposes to add supplemental allegations about events occurring as early as October 2001 all the way up to today.  For convenience, the court divides these allegations into pre-closing and post-closing allegations.  A closing under the Option Agreement was scheduled on October 10, 2003.  That closing failed, however, and shortly thereafter, the defendants in the AT&T case filed summary judgment motions, contending that Tribune Publishing lost the right to close.  During what was supposed

to be a final pretrial conference hearing before Judge Stewart, Tribune Publishing responded that it was excused from closing.

Tribune Publishing now proposes to add pre-closing allegations to its complaint to support that it was excused from closing, including: (1) on July 16, 2001, MediaNews filed an answer and counterclaim in this action, asserting, among other things, claims to invalidate the Option Agreement and the Management Agreement; (2) on July 31, 2002, Kearns-Tribune refused to continue the Management Agreement; (3) on June 26, 2002, Deseret News advised Tribune Publishing of its intent not to waive its rights under the Joint Operating Agreement (JOA) (4) in 2001, MediaNews and Deseret News amended the JOA; (5) MediaNews materially changed *Tribune* services by, for example, eliminating porch delivery; (6) MediaNews did not agree on an exercise price under the Option Agreement; (7) MediaNews retained an appraiser that inflated the value of *The Tribune*; (8) MediaNews disagreed over the selection of a third-party appraiser; (9) Management Planning committed errors and improprieties in appraisal process (many of which are already generally and/or specifically alleged in the Management Planning case); and (10) MediaNews submitted sham documents for the October 10, 2003 closing.

Tribune Publishing also proposes to add allegations that the defendants have committed post-closing bad acts that make performance of the Option Agreement impossible, primarily that MediaNews has improperly disposed of and failed to preserve Tribune assets: (1) MediaNews and Deseret News completed an expensive new printing facility in West Valley, Utah, and in April 2006, moved production of *The Tribune* and *Deseret News* to that facility; (2) MediaNews and Deseret News created a new entity, Salt Lake Newspaper Production Facilities, LLC to own

and operate the new printing facility, including the land, building, and presses; (3) Deseret News and MediaNews Group deliberately structured the transaction regarding the new printing facility so that Kearns-Tribune (and hence, Tribune Publishing) would have no interest in the new facility; and (4) in December 2006, MediaNews Group announced that it intended to liquidate certain unique and historic *Tribune* assets, which included *The Tribune* building, Salt Lake City Regent Street properties, printing presses, and other production equipment that had been used by *The Tribune* for decades, and its Urbanite facility (a printing press operation that served as a backup location for printing *The Tribune*).

Based upon these allegations, Tribune Publishing seeks to assert six "new" claims: (1) breach and repudiation of contract against Kearns-Tribune; (2) breach of the covenant of good faith and fair dealing against Kearns-Tribune; (3) unjust enrichment against Kearns-Tribune; (4) interference with contract against MediaNews and Deseret News, individually and in concert; (5) interference with prospective economic relationships against MediaNews, Deseret News, and AT&T individually and in concert; and (6) civil conspiracy against MediaNews, Deseret News, and Kearns-Tribune.

Defendants oppose Tribune Publishing's motion to supplement and amend the Fourth Amended Complaint, contending that the motion is untimely, unduly prejudicial, and futile. The court agrees.

> B.    *Standard governing motions to supplement and to amend*

Tribune Publishing moves to supplement and amend under Rules 15(a) and (d). In relevant part, Rule 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting

forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."   In relevant part, Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[10]

In their memoranda, the parties do not contend that the standards governing application of these rules is materially distinct.  "Rule 15(d) . . . plainly permits supplemental amendments to cover events happening after suit, and it follows of course that persons participating in these new events may be added if necessary.  Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice."[11]

And the Supreme Court has stated,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."[12]

---

[10] Fed. R. Civ. P. 15(a).

[11] *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964) (allowing supplemental amended complaint that alleged new transactions occurred as part of continued efforts to circumvent desegregation order).

[12] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1279 (10th Cir. 2001) (noting that leave to supplement "'should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants'") (quoting *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989)); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure at § 1510 (2d ed. 1990 & Supp. 2007) (hereinafter Wright & Miller).

Applying these factors and concerns, courts have allowed supplemental pleadings to update earlier pleadings, to change the amount or nature of relief requested in the original pleading, and to allege separate and additional claims although the courts may require some relationship between the original and later claims.[13]  The courts reason that where the supplemental pleading relates to the same underlying allegations, the supplemental pleading will prevent the delay that would otherwise be caused by having to initiate a new suit on the new facts.[14]  However, it is well settled that whether to allow a plaintiff to amend or supplement its complaint is within this court's discretion.[15]  And supplementation or amendment may be denied if (1) the moving party is guilty of inexcusable delay;[16] (2) if additional delay would occur in an action ripe for trial,[17] or (3) the opposing party would suffer undue prejudice.[18]  In addition to these three grounds, courts have denied leave to amend when amendment would be futile.[19]

In this case, Tribune Publishing seeks to both supplement and amend its complaint.  The great bulk of Tribune Publishing's proposed allegations and claims are

---

[13]Wright & Miller at § 1504.

[14]*See Griffin,* 377 U.S. at 226-27.

[15]*See, e.g., E.R. Reid v. Int'l Union*, 479 F.2d 517, 520-21 (10th Cir. 1973).

[16]*See Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1205 (10th Cir. 2006); *Walker*, 240 F.3d at 1279; Wright & Miller at § 1510.

[17]*See Walker,* 240 F.3d at 1279 (upholding denial of leave to supplement where discovery was closed and opposing party was ready for trial or summary judgment).

[18]*See Minter,* 451 F.3d at 1205; Wright & Miller at § 1510.

[19]*See Watson v. Beckel*, 242 F.3d 1237, 1239 (10th Cir. 2001).

inexcusably late.  Moreover, allowing amendment would unreasonably delay resolution of this long-pending matter and would unduly prejudice the defendants, particularly AT&T and Deseret Publishing.  Finally, the claim for prospective interference with economic relations appears futile.

     *C.*     *The motion to supplement and amend is inexcusably late.*

Tribune Publishing contends that the filing of an amended complaint was impractical and impossible before May 18, 2007.  The court disagrees.  The record shows that Tribune Publishing could have moved to amend its complaint much earlier but chose not to do so, seemingly for tactical reasons.  Because Tribune Publishing is guilty of inexcusable delay, the court denies the motion to amend.

      "Lateness does not of itself justify the denial of the amendment."[20]  A party who delays in seeking amendment, however, "is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.  The longer the delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."[21]  The Tenth Circuit has held that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"[22]

In this case, Tribune Publishing has had numerous opportunities to amend – and has three times already amended the complaint.  The time to amend has run, discovery

---

[20]*Minter*, 451 F.3d at 1205 (quotations and citations omitted).

[21]*Id.* (quotations and citations omitted).

[22]*Id*. (quoting *Franks v. U.S. West,* 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

has closed, the trial has been rescheduled at least three times, and this matter has been on the verge of trial twice. Tribune Publishing, however, does not adequately explain why it did not move to amend until May 18, 2007.

A brief review of the labyrinthine history of this case is instructive here. On December 1, 2000 – more than six-and-a-half years ago[23] – Tribune Publishing filed its complaint against AT&T, seeking, among other things, to enjoin the sale of Kearns-Tribune to MediaNews and to obtain relief from AT&T based upon failed negotiations with Tribune Publishing to accelerate purchase of *The Tribune*. On December 5, 2000, Tribune Publishing filed an amended complaint, joining MediaNews as a defendant, but the complaint still focused on AT&T's sale of Kearns-Tribune and the failed negotiations with Tribune Publishing. The court refused to enjoin the sale.

On June 22, 2001, Tribune Publishing filed a Second Amended Complaint, still asserting claims related to the sale of Kearns-Tribune to MediaNews and asserting interference with prospective economic relations. On August 28, 2001, the court granted Tribune Publishing leave to file a Third Amended Complaint to reflect potential federal antitrust claims. On September 12, 2001, Tribune Publishing filed another motion to amend, asserting that no party would be prejudiced because it brought the motion to within the extended deadline (originally set for August 31, 2001) to file amended pleadings – September 12, 2001. AT&T did not oppose the motion on the basis that its pending summary judgment motion would apply to the amended complaint. On October 22, 2001, Tribune Publishing filed its Fourth Amended Complaint, the operative

---

[23] *Cf. Charles Dickens, Bleak House*, (Norman Page ed., Penguin Books 1971) (1853).

complaint in the AT&T case.  Thus, Tribune Publishing has already been allowed to
amend its complaint three times.

Additionally, discovery has long since closed and this case has twice been within
three weeks of trial.  The Scheduling Order initially set a fact discovery deadline of
January 31, 2002 and trial on June 24, 2002.  On April 1, 2002, and on the parties'
stipulation, the court extended fact discovery to March 29, 2002.  On May 14, 2002,
Tribune Publishing moved the court to continue the trial date and to reopen discovery.
On May 24, 2002, the court continued the trial date to September 9, 2002, but it refused
to reopen discovery with minor exceptions.  On July 31, 2002, Tribune Publishing's
rights to manage *The Tribune* expired under the Management Agreement.  On July 22,
2002, this court denied Tribune Publishing's motion to preclude MediaNews from taking
over *The Tribune* management upon expiration.  Tribune Publishing immediately
appealed that denial to the Tenth Circuit, which on March 23, 2003, upheld the denial of
the injunction.

On August 2, 2002, Tribune Publishing exercised its right to reacquire *The
Tribune* under the Option Agreement.  Because the parties were unable to agree on a
price, pursuant to the Option Agreement, each party submitted its own appraisal of *The
Tribune* assets as of the Valuation Date, July 31, 2002.  Because the parties' valuations
diverged by more than the percentage specified in the Option Agreement, the parties were
required to jointly select a third appraiser.  In late August 2002, with only three weeks
remaining before trial, the court recognized that the appraisal process would not be
completed in time for the September 9 trial date.  The court therefore again continued the

trial, this time to January 13, 2003.

On December 13, 2002, with its denial of Tribune Publishing's motion to enjoin MediaNews from managing *The Tribune* on appeal, and no immediate prospect of an appraisal or a closing, the court vacated the January 13 trial without setting a new trial date, but indicated that the next available date would be in November 2003.  On January 13, 2003, the court denied Tribune Publishing's  motion to stay the AT&T case pending resolution of the Tenth Circuit appeal.  On March 25, 2003, the court continued the trial date a third time to November 3, 2003.

On June 11, 2003, Management Planning, the third-party appraiser,  issued a final report valuing *The Tribune* assets.  On June 24, 2003, Tribune Publishing filed the Management Planning action, seeking a declaratory judgment that the appraisal be set aside on several grounds, including that the appraisal's definition of "fair market value" was inconsistent with the definition established in the Option Agreement; that the appraisal was performed inconsistently with professional appraisal standards; and that it ignored evidence material to the valuation of *The Tribune* assets.  Significantly, however, at that time, Tribune Publishing did not seek any amendment to its complaint in the AT&T case.  In particular, it did not seek to add any allegations regarding the  pre-closing claims, including the claims about the appraisal process, that it seeks to add now, although the circumstances surrounding the appraisal were well known to it and although no appeal was pending before the Tenth Circuit in the AT&T case (the mandate had issued on March 23, 2003).

On September 19, 2003, the court granted the defendants' motion to dismiss the

Management Planning case, finding that Management Planning's appraisal was an arbitration under the Federal Arbitration Act.  On October 2, 2003, the court vacated orders in the AT&T case that tolled the time for closing under the Option Agreement. The court then ordered that the remaining time for closing "will begin to run again on Friday, October 3, 2003."  The parties, however, failed to close.

With trial pending in the AT&T case on November 3, 2003, on October 13, 2003, the defendants filed motions for summary judgment contending that Tribune Publishing's failure to close was fatal to its claims in the AT&T case.  In an October 14, 2003 hearing, originally set as a *final* pretrial conference, Tribune Publishing reported that the parties failed to close and informed the court that it disagreed with the defendants' position that its failure to close was fatal.  Significantly, Tribune Publishing also told the court that it intended to try the case based upon the defendants' alleged long-running misconduct, including much of the pre-closing conduct it now proposes to add to its complaint. Tribune Publishing also informed the court that it intended to appeal its dismissal of the Management Planning case.  This court, however, "announced that it ha[d] no intention of allowing issues of exercise price or any issues previously ruled upon to come before a jury.  The court [would] not deal with the pending motions for summary judgment until Plaintiff determines whether they want to submit the Court's ruling on arbitration and their motion to vacate [in the Management Planning case] to the appellate court."

On October 17, 2003, on the *second* eve of trial, because of the appeal pending in the Management Planning case, the parties stipulated to stay and administratively close the AT&T case.  Tribune Publishing entered into that stipulation although it fully

intended to seek relief based upon pre-closing allegations that it now asserts made performance of the Option Agreement impossible.

Not until September 13, 2004, however, did the court actually enter an order staying the AT&T case. Because activity involving later-severed parties and claims were pending, the court initially denied without prejudice the stipulated motion to administratively close the case. After the parties and claims were severed, on March 24, 2005, this court administratively closed the AT&T case.

The Tenth Circuit ultimately reversed the dismissal of the Management Planning case and in early 2005, shortly after the case was remanded, Tribune Publishing filed an Amended Complaint in the Management Planning case. It made no effort to amend its complaint in the AT&T case. The defendants again moved to dismiss the Management Planning complaint and, on October 24, 2005, the court granted the defendants' second motion to dismiss in the Management Planning case. Tribune Publishing again appealed.

Tribune Publishing, however, still did not seek to lift the stay and move to file an amended complaint in the AT&T case. On July 19, 2006, the Tenth Circuit again reversed this court's dismissal of the Management Planning case. Shortly thereafter, the Management Planning case was transferred to the undersigned judge.

Not until September 22, 2006, did Tribune Publishing move the court to lift the stay and administrative closure and request to amend the Fourth Amended Complaint in the AT&T case. In moving to amend, however, Tribune Publishing, failed to specifically offer the substance of or provide a proposed amended complaint. All of the pre-closing allegations and claims and nearly all of the post-closing allegations and claims about changes in *Tribune* assets

should have been apparent to Tribune Publishing at this time.  Tribune Publishing had already

asserted asset and abatement claims in the Management Planning case.  Unable to determine

whether the motion to amend should be granted, the court properly denied Tribune

Publishing's motion for leave to file a supplemental amended complaint, without prejudice.[24]

On March 28, 2007, the AT&T case was transferred to the undersigned judge.  To

facilitate resolution of both matters, the court set a briefing schedule and a status conference

for April 18, 2007.  At the conference, Tribune Publishing informed the court of its desire to

again amend the complaint in the AT&T case.  The court set a briefing schedule on the motion

to amend so as to preclude further delay.  Specifically, the court ordered a motion to amend to

be filed on or before May 18, 2007.  Tribune Publishing filed its motion to amend and its

proposed amended complaint on May 18, 2007.

In short, between October 13, 2003 and September 22, 2006 – nearly three years –

Tribune Publishing had at least three opportunities to move to amend its complaint.  First,

rather than stipulating to stay this matter on October 17, 2003, it could have (and should have)

moved to amend at that time.  The pre-closing allegations are the bulk of the allegations

Tribune Publishing seeks to add to its complaint and all of those allegations were readily

apparent to Tribune Publishing then.  Indeed, Tribune Publishing directly informed the court

on October 13, 2003 – *before* stipulating to the stay – that it intended to seek relief based upon

such allegations.

Second, after the first appeal reversing the motion to dismiss in the Management

_____

[24]*See* Fed. R. Civ. P. 7(1)(b) ("An application to the court for an order . . . shall state with
particularity the grounds therefor, and shall set for the relief or order sought.").

Planning case in 2005, Tribune Publishing could have (and should have) moved to lift the stay and moved to amend in the AT&T case.  In fact, Tribune Publishing proceeded to generally allege in the Management Planning case that post-closing, the defendants have changed *The Tribune* assets and therefore it is entitled to an abatement.  But it did not specifically seek to add these allegations in the AT&T case until May 18, 2007 – nearly two years later.  Third, Tribune Publishing could have (and should have) filed a proposed amended complaint when on September 22, 2006, it moved to lift the stay, reopen, and moved to amend the complaint in the AT&T case – but did so without specifying what amendments it sought to add.  The court is left with serious doubt about whether Tribune Publishing's decision not to include a proposed amended complaint was made for tactical reasons.  In light of Tribune Publishing's recent announcement in the Management Planning case that it no longer seeks to acquire *The Tribune,* perhaps Tribune Publishing was seeking leave to amend while leaving open two different directions for the amendments to take.  The court has no way to definitively assess the motivating factors behind the decision not to include a copy of the proposed amendments. But it is clear that, despite yet another prime opportunity to move to amend, Tribune Publishing did not do so.

In view of this history, Tribune Publishing has failed to offer a satisfactory explanation for not moving to amend with the current proposed amended complaint until May 18, 2007. To be sure, the parties stipulated to stay and administratively close the AT&T case pending resolution of the appeals in the Management Planning case in October 2003.  But Tribune Publishing could have filed the proposed amendments before seeking the stipulated stay. Moreover, because Tribune Publishing seeks to make much out of the stay and administrative

closure that was ultimately entered, it is useful to reveal what an "administrative closure" is. As the name indicates, an *administrative* closure is merely an administrative device designed to clear the court's docket of an inactive case.  The case is "closed" – not finally resolved – because the case may become active again.  In general, either party to a case that is administratively closed may reopen the case by simple motion.  In fact, the order here so provided.

Tribune Publishing has offered no good reason for failing to make that motion and then moving forward with its amended complaint.  Even during the last year – when it filed a motion to amend but proposed no new complaint – Tribune Publishing declined to reveal the contents of its new complaint until it made a decision to dramatically change the thrust of its litigation in both the Management Planning case and the AT&T case by not seeking to acquire the *Tribune* assets.  Tribune Publishing makes much of its assertion that it did not know the printing facility was gone until March 2007.   However, Tribune Publishing was well aware of MediaNews' plans to move before and that it had moved publication of *The Tribune* in the spring of 2006.  The court has no way to determine what motivated this approach.  But the court can determine that no good explanation has been offered for the multi-year delay.  For this reason alone, the motion to amend is denied.

> D.  *Allowing amendment at this late date would unreasonably delay resolution of this matter.*

As a separate and independent reason for denying leave to amend, the court finds that the amendment would unreasonably delay resolution of this case.  The Tenth Circuit has upheld denials of motions to amend where discovery has closed, the parties were ready for trial

or summary judgment, and the amendment would have required additional discovery and precluded the entry of judgment.[25]  That is precisely the situation here.

The parties agree that allowing the amendment would require reopening of discovery. Indeed, Tribune Publishing asserts that significant new discovery will be required.  Discovery, however, closed on March 29, 2002 – more than five years ago.  And the court shortly thereafter denied Tribune Publishing's request to reopen discovery, with very limited exceptions.

Moreover, this case has *twice* been within a few weeks of a scheduled trial date. After this matter was reopened and transferred to the undersigned judge, the court emphasized to the parties that it intended to expeditiously resolve both the Management Planning case and the AT&T case.  Consistent with that plan, the court has scheduled an eight-day trial, beginning February 4, 2008, on liability in the AT&T case (spelled out in greater detail below).  If this court were to allow the amendment and reopen discovery, this matter could not be resolved on any reasonable time frame.  At some point, this litigation must come to an end.  This time is rapidly approaching.  Because unreasonable delay will result from the amendment, the court denies leave to amend on this ground as well.

>    E.    *The defendants will be unduly prejudiced by the proposed amendments*.

A separate, independent reason for denying the motion to amend is that the defendants will be unduly prejudiced.  Tribune Publishing claims that the defendants cannot show prejudice from the amendment because the amendment simply enlarges the case.  "There is invariably some practical prejudice resulting from an amendment, but this is not the test for

---

[25]*See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1279 (10th Cir. 2001).

refusal of an amendment."[26]  "Courts typically find prejudice *only* when the amendment

unfairly affects the defendants in terms of preparing their defense to the amendment."[27]

The court finds that the defendants would be *unfairly* prejudiced by the amendments.

Tribune Publishing concedes that the amendments would require *substantial* discovery, a

significant part of which would require questioning witnesses about events that happened more

than four years ago.  While this might seem to impose an equal burden on all parties, Tribune

Publishing fully knew that it planned to move to amend its complaint and what it might add to

its amended complaint.  With that knowledge, Tribune Publishing conducted extensive

discovery in the Management Planning case involving many of the same witnesses involved in

the AT&T case.  In contrast, Deseret News did not participate in recent discovery in the

Management Planning case.  (Indeed, Tribune Publishing strenuously objected to any

participation by Deseret News).  Thus, allowing the amendments that involve Deseret News

would force it to have to undertake discovery considerably later than Tribune Publishing, when

memories of events that might have been helpful will have become somewhat dimmer.  The

prejudice to AT&T is even greater.  While AT&T is technically still a "party" to this action,

the on-the-ground reality is that it has not participated in this action since 2001, over five years

ago, when the court dismissed the claims against it with prejudice, except for the prospective

interference with economic relations claim (which the court dismissed without prejudice and

which, as discussed below, the court now concludes is futile).  The court concludes that

---

[26]*Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971) (stating that damages awarded on
amended count was practical prejudice).

[27]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (internal quotations
omitted) (emphasis added).

allowing the amendment as to AT&T would be unduly prejudicial, as it would be five years

behind Tribune Publishing in conducting discovery to support its theory of the case.

      Tribune Publishing contends that because of related cases, the parties have been on

notice of the facts as they have occurred.  Specifically, Tribune Publishing asserts "[m]any of

the material events have been alleged as bad acts in *Salt Lake Tribune Publ'g Co. v. MPI*, Case

2:03cv565 PGC . . . [and] the *MediaNews Group, Inc. v. Philip G. McCarthey, et al.*, Case

2:03cv176 TC ("McCarthey case"), which involves MediaNews, Kearns-Tribune, Deseret

News, and the AT&T Defendants."  Yet this claim is a two-edged sword.  If anything, this

claim supports this court's opinion that it has unduly delayed moving to amend in the AT&T

case.  Moreover, while it is true that many of the events are the same, what is prejudicial is that

the parties have been over the last year heavily involved in discovery in the Management

Planning case.  It is prejudicial to the defendants to force them to undertake yet another round

of discovery on issues that could have been conveniently handled during that discovery.

      Tribune Publishing contends that it will suffer severe prejudice if the court does not

allow it to update its complaint.  Specifically, Tribune Publishing maintains that it will not be

able to seek relief for bad acts that have occurred from the outset of this case.  What a close

read of the complaint really seems to suggest, however, is that a new bevy of lawyers has

decided to take a stab at revising the complaint to their liking.  However much of an

improvement the new complaint may be (a subject on which the court expresses no view), a

change in legal teams is no grounds for permitting a late amendment.  Moreover, the court is

not persuaded that Tribune Publishing's Fourth Amended Complaint will somehow afford it

incomplete relief.  Tribune Publishing has already pleaded breach of contract, breach of

covenant of good faith and fair dealing, and interference with contract claims.  It also seeks

damages and specific performance.  Many of the proposed amendments appear to be a

reformulation by new counsel of these claims and relief.  Tribune Publishing has not offered

any persuasive reason for thinking that the Fourth Amendment Complaint (in which it

apparently seeks something like $100 million in damages) is somehow not up to the task of

providing appropriate relief – if it prevails at trial.  Additionally, Tribune Publishing has

already pleaded abatement for changes to *The Tribune* assets in the Management Planning

case.  If Tribune Publishing prevails in that case, it will have the opportunity to pursue that

relief there.  If it fails to prevail in that case, it should not get a second bite of the apple in the

AT&T case.

　　　　Finally, in regard to the change in remedies, the Tenth Circuit has clearly envisioned

that the Tribune Publishing could be made whole by a combination of specific performance

and damages.[28]  This court will, of course, follow that direction.  To assist in achieving that

direction, the court intends to bifurcate liability and damages in the AT&T case.  Should

Tribune Publishing prevail on liability in the AT&T case, the court will entertain a renewed

motion to amend at that time if Tribune Publishing can make a specific showing that the

available remedies at that time are insufficient to comply with the Tenth Circuit's direction.

　　　　*F.    The prospective interference with economic relations claim appears futile.*

　　　　One specific claim deserves separate discussion.  Tribune Publishing seeks to reinstate

the prospective interference with economic relations claim against the defendants, which was

---

[28]*See Salt Lake Tribune Publ'g Co. v. AT&T Corp*., 320 F.3d 1081, 1101 (10th Cir.
2003).

dismissed without prejudice as premature. To establish this claim, Tribune Publishing must

show that the defendants: (1) intentionally interfered with prospective economic relations, (2)

for an improper purpose or by improper means, and (3) damage thereby.[29]  The court

previously dismissed this claim because Tribune Publishing had not established that it would,

in fact, be deprived of its opportunity to own and operate *The Tribune*.  Tribune Publishing has

now renounced any intention of seeking to acquire *The Tribune*, and thus establish the

relationships at the heart of this claim.  Thus, the claim is still premature and any effort to add

the claim now is futile.  To the extent that the claim seeks to show that the interference was

achieved by manipulation of the appraisal process, those claims will be fully litigated in the

Management Planning case and should not be repeated in the AT&T case.

For all the foregoing reasons, the court denies the motion to amend.

## III.  FINAL JUDGMENT AS TO AT&T

AT&T notes that it has not been a party to this action.  While the court has dismissed

all claims against AT&T, the court has not dismissed AT&T from this action.  Rule 54(b) of

the Federal Rules of Civil Procedure provides that in the absence of a determination that there

is no just reason for delay and of express direction for the entry of judgment as to a party, "any

order . . . [that] adjudicates fewer than all the claims or the rights and liabilities of fewer than

all the parties shall not terminate the action as to any of the claims or parties."[30]  The court has

found no Rule 54(b) judgment dismissing AT&T from this action.  Thus, AT&T is still

technically a party to this action.  Nonetheless, given the court's denial of the motion to

---

[29]*See, e.g.*, *Leigh Furniture & Carpet Co. v. Isom*, 657 P.3d 293, 301 (Utah 1982).

[30]Fed. R. Civ. P. 54(b).

amend, the court questions whether there is any just reason for delaying entry of final

judgment dismissing AT&T from this action.  If final judgment were entered in favor of

AT&T, it would permit one team of lawyers from WilmerHale to represent Salt Lake Tribune

Publishing in both the AT&T and Management Planning cases rather than the current two

teams.  (If AT&T were out of the case, a conflict of interest would disappear.)  This would

greatly simplify the court's handling of the two cases.  The court's plan, therefore, is to enter

final judgment in favor of AT&T unless AT&T and/or Tribune Publishing is able to present

some strong reason for not doing so.  AT&T may advise the court of any position it has on or

before August 2, 2007.  Tribune Publishing may advise the court of its position on or before

August 16, 2007.

## IV.  MANAGEMENT PLANNING PRETRIAL SCHEDULING ORDER

The final pretrial conference in this matter is scheduled for **August 22, 2007,** at 3:00

p.m. and **August 24, 2007,** at 11:00 a.m.  This matter is set for a nine-day jury trial on liability

on claims one and two beginning **September 4, 2007,** at 8:00 a.m.  The attorneys are expected

to appear in court at 7:45 a.m. on the first day of trial for a brief pretrial meeting.  Counsel are

instructed as follows:

## 1.  Court-Imposed Deadlines

The deadlines described in this order cannot be modified by a stipulation of the parties.

Any party that believes an extension of time is necessary should file an appropriate motion.

**2. Right to a Jury Trial**

In accord with the court's prior order, on or before **July 25, 2007**, Tribune Publishing shall file its memorandum in support of its request for a jury trial.  On or before **August 3, 2007**, the defendants shall file any opposition.  On or before **August 10, 2007**, Tribune Publishing may file any reply.  On or before **August 17, 2007**, defendants shall file any surreply.  The court will render a decision at the Final Pretrial Conference on August 22 and 24, 2007.  The court advises the parties that it may well take an advisory jury verdict even on causes of action or defenses not triable by jury.

**3. Pretrial Order**

On or before **August 16, 2007,** plaintiffs are to file a joint proposed pretrial order which has been approved by all counsel.  The pretrial order should conform generally to the requirements of D. Utah Civ. R. 16-1 and to the approved form of pretrial order which is reproduced as Appendix IV to the Rules of Practice for the U.S. District Court for the District of Utah.  In addition to the standard provisions in the pretrial order, the following special provisions should be included:

      (a)      The statement of uncontroverted facts called for in Section 3 of the General form of  the Pretrial Order shall be in narrative form.  Such facts shall be considered substantive evidence in the case and shall be marked as an exhibit.  At the beginning of trial, the court will read the exhibit into evidence.

      (b)      In reference to Section 7 of the General Form of the Pretrial Order, regarding all witnesses that are proposed as expert witnesses, the parties are directed to append to the agreed facts copies of the curriculum vitae of each such expert.

(c)      In further reference to Section 7 of the General Form of the Pretrial Order, the

parties shall also include:

        (I)      a statement of an estimated time for direct and cross-examination of

        each witness likely to be called;

        (ii)      a short (one paragraph) summary of the substance of the testimony of

        each witness; and

        (iii)      a projected total time for each party to present its case.

The court will work with the parties at the final pretrial conference to prepare an

appropriate time budget for the parties to insure the efficient presentation of evidence and

timely conclusion of the trial.  The court's desire to use a time budget in this matter is fortified

by the American Bar Association's American Jury Project's recent recommendation that courts

"after conferring with the parties, should impose and enforce reasonable time limits on trial or

portions thereof."[31]  The project explained that "[j]ury service is an involuntary obligation

imposed by the government on its citizens" and this recommendation "seeks to minimize juror

dissatisfaction by encouraging courts to manage trial time more efficiently . . . so that jurors do

not feel that their time is being wasted."[32]  The court emphasizes that any time budget in this

case will be presumptive and that the court may make alterations (either lengthening or

shortening the budget) upon good cause shown.

---

[31]A.B.A., American Jury Project, *Principles for Juries and Jury Trials*, Principle 12 at 89
(2004).

[32]*Id.* Principle 12 cmt.

**4.  Jury Instructions**

The court has adopted its own standard general jury instructions, which may be

obtained prior to trial from the court's website – www.utd.uscourts.gov, under "Judges,"

"Cassell," and "Practices and Procedures."  The parties should use the court's stock

instructions wherever possible, and only submit jury instructions outside of the court's stock.

The procedure for submitting proposed jury instructions is as follows:

>  (a)     The parties must serve their proposed jury instructions on
>
> each other on or before **August 7, 2007.**  The parties should then confer in
>
> order to agree on a single set of instructions to the extent possible.
>
>  (b)     To the extent the parties cannot agree upon one complete set of final
>
> instructions, they may submit separately those instructions that are not agreed
>
> upon.  It is not enough for the parties to merely agree upon the general
>
> instructions and then each submit their own set of substantive instructions,
>
> however.  The court expects the parties to meet, confer, and agree upon the
>
> wording of the substantive instructions for the case to the extent possible.
>
>  (c)     The joint proposed instructions (along with the proposed
>
> instructions upon which the parties have been unable to agree) must be filed
>
> with the court *and* emailed to chambers at felise_moll@utd.uscourts.gov on or
>
> before **August 14, 2007.**  All proposed jury instructions must be in the
>
> following format:
>
>>  (I)     An original and one copy of each instruction, labeled and
>>
>> numbered at the top center of the page to identify the party submitting

the instruction (e.g., "Joint Instruction No. 1" or "Plaintiff's Instruction No. 1"), and including citation to the authority that forms the basis for it.

(ii)    If possible, the instructions emailed to chambers should be in WordPerfect format.

(d)    Each party should file its objections, if any, to jury instructions proposed by any other party on or before **August 14, 2007.**  Any such objections must recite the proposed instruction in its entirety and specifically highlight the objectionable language contained therein.  The objection should contain both a concise argument why the proposed language is improper and citation to relevant legal authority.  Where applicable, the objecting party **must** submit, in conformity with paragraph 3(c)(i) - (ii) above,  an alternative instruction covering the pertinent subject matter or principle of law.  Any party may, if it chooses, submit a brief written response in support of its proposed instructions on or before **August 20, 2007.**

(e)    All instructions should be short, concise, understandable, and **neutral** statements of law.  Argumentative instructions are improper and will not be given.

(f)    Modified versions of statutory or other form jury instructions (e.g., Federal Jury Practice and Instructions) are preferred.  A modified jury instruction must, however, identify the exact nature of the modification made to the form instruction and cite the court to authority, if any, supporting such a

modification.

The court will begin considering issues regarding the jury instructions at the Final

Pretrial Conference on August 22 and 24, 2007.

**5.  Special Verdict Form**

The procedure outlined for proposed jury instructions will also apply to special verdict

forms.  The parties must serve their proposed verdict form on each other on or before **August**

**7, 2007.**  The procedure for submitting a proposed verdict form(s) is as follows:

(a)    The parties should then confer in order to agree on a single form to the

extent possible.

(b)     If the parties cannot agree upon a form, they may submit separately their forms.

(c)    The joint proposed form or the separate forms must be filed with the

court *and* emailed to chambers at felise_moll@utd.uscourts.gov on or before **August**

**14, 2007.**

(d)    The parties should file their objections, if any, to the form proposed by any

other party on or before **August 14, 2007.**  Any such objections must recite the form

and specifically highlight the objectionable language contained therein.  The objection

should contain both a concise argument why the proposed language is improper and

citation to relevant legal authority.  Where applicable, the objecting party **must** submit,

an alternative form covering the pertinent subject matter or principle of law.  Any party

may, if it chooses, submit a brief written reply on or before **August 20, 2007.**

The court will begin considering issues regarding the verdict form at the Final Pretrial

Conference on August 22 and 24, 2007.

**6.  Voir Dire**

The court will send a questionnaire to all potential jurors prior to trial.  The copies of the answered and returned questionnaires will be available after 3:00 p.m. from chambers on **August 30, 2007**.  On **August 31, 2007**, at 2:30 p.m. the court will hold a hearing with the attorneys to begin the jury selection process based upon the answered and returned questionnaires.  Potential jurors who qualify after this initial selection hearing will then appear the morning of trial for further voir dire conducted by the court.

**7.  Exhibit Lists/Marking Exhibits**

The court expects both sides to make significant efforts to stipulate to the admissibility of the exhibits when authenticity and relevance is clear.  The court will look with disfavor on frivolous objections regarding the "foundation" or relevance of business records relevant to this dispute.  The court also expects that each side to this case could present its case effectively with approximately 100 exhibits not exceeding approximately 1000 pages in length total. All parties are required to prepare an exhibit list for the court's use at trial.  The list contained in the pretrial order will not be sufficient; a separate list must be prepared.  Plaintiffs should list their exhibits by number; defendants should list their exhibits by letter.  Standard forms for exhibit lists are available at the clerk's office, and questions regarding the preparation of these lists may be directed to the courtroom deputy, Trisha Little, at 524-6135.  All parties are required to pre-mark their exhibits and should confirm with Ms. Little that they are proceeding appropriately.

## 8.  Motions in Limine

Where a party can reasonably anticipate in advance of trial any significant evidentiary issue arising at trial concerning the admissibility of evidence that the party believes should be excluded, the objecting party is directed to raise the issue by way of a motion in limine.  All motions in limine shall be filed with the court on or before **July 31, 2007.**  Each party seeking to exclude evidence shall file a single consolidated motion listing separately each item of evidence sought to be excluded and a single consolidated supporting memorandum, not to exceed 50 pages in length.  Responses, not to exceed 50 pages in length, shall be filed on or before **August 7, 2007.**  Any replies, not exceeding 25 pages in length, shall be filed on **August 14, 2007.**  The court will rule on these motions at the final pretrial conference on **August 22 and 24, 2007.**

Any *Daubert* challenges to expert witnesses *must* be raised by a separate motion in limine following the procedures and deadlines described above.  A single supporting memorandum raising all Daubert challenges not exceeding 50 pages shall be filed on or before **July 31, 2007.**  The party whose expert witness has been challenged under *Daubert* should include in its response a written proffer establishing the reliability of the witness**.**  The responsive memorandum shall not exceed 50 pages in length and shall be filed on or before **August 7, 2007.**  Any replies, not exceeding 25 pages in length, shall be filed on or before

**August 14, 2007.**  The court will rule on these motions at the final pretrial conference on

**August 22 and 24, 2007.**

**9. Settlement**

The settlement deadline is **August 24, 2007**.  After that date, the parties are directed

not to engage in settlement discussions without first obtaining leave of court.

**10.  Courtroom Conduct**

In addition to the rules outlined in DUCivR 43-1, the court has established the

following ground rules for the conduct of counsel at trial:

(a)      Please be on time for each court session.  In most cases, trial will be conducted

from 8:00 a.m. until 2:00 p.m., with two short (fifteen-minute) breaks.

(b) Stand as court is opened, recessed or adjourned.

(c) Stand when the jury enters or retires from the courtroom.

(d) Stand when addressing, or being addressed by, the court.

(e) In making objections and responding to objections to evidence, counsel

should state the legal grounds for their objections with brief reference to the

rule of evidence or doctrine upon which they rely.  For example,  "Objection . .

. inadmissible under Rule 402," or "Objection . . . hearsay."

(f) Sidebar conferences are discouraged.  Most matters requiring argument

should be raised during recess or, of course, prior to trial in a motion in limine.

Please plan accordingly.

(g) Counsel need not ask permission to approach a witness in order to **briefly**

hand the witness a document or exhibit.

(h) Address all remarks to the court, not to opposing counsel, and do not make disparaging or acrimonious remarks toward opposing counsel or witnesses. Counsel shall instruct all persons at counsel table that gestures, facial expressions, audible comments, or any other manifestations of approval or disapproval during the testimony of witnesses, or at any other time, are prohibited.

(I) Only one attorney for each party shall examine, or cross-examine, each witness.  The attorney stating objections during direct examination shall be the attorney recognized for cross examination.

(j) When not taking testimony, counsel will remain seated at counsel table throughout the trial unless it is necessary to move to see a witness.  Absent an emergency, do not leave the courtroom while court is in session.  If you must leave the courtroom, you do not need to ask the court's permission.

## 11.  Jury Questions

The court intends to allow the jury to ask reasonable questions during the trial, filtered through the court.  Any objection to this process should be filed on or before **August 21, 2007.**

## V.     POST-TRIAL MANAGEMENT PLANNING SCHEDULING ORDER

The court HEREBY ORDERS the following post-trial schedule involving claims one and  two of the Management Planning case:

1.        Any motion for a new-trial or other post-trial motion allowed by law on claims one or two shall be filed on or before **October 15, 2007**; any opposition shall be filed on or before **November 2, 2007**; and any reply shall be filed on or before **November 14, 2007**.  The

court sets a hearing on any such post-trial motions on **December 6, 2007,** at 3:00 p.m.

2.      Any Motions for summary judgment on any remaining claims shall be filed

on or before **October 15, 2007**; any opposition shall be filed on or before **November 2, 2007**;

and any reply shall be filed on or before **November 14, 2007.**  The court sets a hearing on such

dispositive motions on **December 6, 2007** at 3:00 p.m.

3.      Should Tribune Publishing substantively prevail at trial on claim one or

two, and/or on the initial motions for summary judgment on any remaining claims, the court

ORDERS discovery to run from **November 29, 2007,** through **March 14, 2008.**  The court

allows 10 depositions and 50 interrogatories to each side.  Plaintiffs' expert reports are due

**April 11, 2008**; defendants' expert reports are due **May 2, 2008**; Plaintiffs' rebuttal expert

reports due **May 16, 2008.**  The final dispositive motion deadline is **June 6, 2008.**

4.      The court schedules an eight-day jury trial starting **September 19, 2008**

on all remaining claims.  This trial will also encompass damages, if any, in the AT&T case as

spelled out below.

## VI.    AT&T SCHEDULING ORDER

With regard to the AT&T case, the court HEREBY ORDERS:

1.      The parties shall file any motions for summary judgment on liability on or

before **October 15, 2007.**  Any oppositions shall be filed on or before **November 2, 2007.**

Any replies shall be filed on or before **November 14, 2007.**  The court will hold a motion

hearing on **December 4, 2007** at 3:00 p.m.

2.      The court will hold an eight-day jury trial on liability in the AT&T case

beginning on **February 4, 2008**.

3.     If Tribune Publishing prevails at trial on liability, then damages discovery will run from one week after the conclusion of trial though **March 14, 2008.**  Plaintiffs' expert reports are due **April 11, 2008**; defendants' expert reports are due **May 2, 2008**; Plaintiffs' rebuttal expert reports due **May 16, 2008.**  The final dispositive motion deadline is **June 6, 2008.**

4.     The court schedules an eight-day jury trial beginning **September 19, 2008.** This trial will also encompass trial (if necessary) on all remaining claims in the Management Planning case.

The court HEREBY ORDERS that all previous inconsistent deadlines are STRICKEN.

SO ORDERED.

DATED this 26th day of July, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge